## Silverstein v. Cohen.

*Israel Krohn*, for plaintiff; *Herbert F. Laub*, for defendant.

STOTZ, J., Nov. 5, 1928.—There are three liens against the defendant's real estate; first, a mortgage held by one George Eben; second, a judgment in favor of Eva Silverstein; and, third, a mortgage given to Ella O. Hartzell.

Ella O. Hartzell has entered her bond accompanying the mortgage of record and has issued execution. She now comes into court upon a rule to show cause why the second lien, the judgment held by Eva Silverstein, should not be stricken from the record. If this is done, the value of her lien will be enhanced, but if otherwise, it remains doubtful.

The ground upon which we are asked to strike off this judgment, as stated in the petition for the rule, is that the Silverstein judgment was entered of record irregularly and illegally, in that there was no compliance with the Act of March 31, 1915, P. L. 39, which provides as follows: "That the prothonotary of each county is hereby directed not to enter any judgment unless the judgment creditor, or his duly authorized attorney or agent, produces to the prothonotary a certificate signed by the judgment creditor, or his duly authorized attorney or agent, setting forth the precise residence address of the said creditor. The certificate shall be filed at the same number and term as the judgment."

The answer admits that this provision of the act was not observed.

In Deibert v. Rhodes, 91 Pa. Superior Ct. 23, the court below struck off a judgment for want of an exact compliance with this act, and upon appeal to the Superior Court was affirmed by a divided court (Judge Keller and Judge Trexler dissented). An appeal was then allowed by and taken to the Supreme Court and the decision of the Superior Court was reversed. [291 Pa. 550.]

But it will be noted that, in reversing the decision of the Superior Court, the Supreme Court adopted neither the reasoning set forth in the majority opinion nor that contained in Judge Keller's dissenting opinion. The majority opinion holds that the act is mandatory, that there was a "total failure" to comply with its provisions, that the prothonotary was, therefore, without authority to enter the judgment, and that the court below was consequently right in striking it off. The Supreme Court reversed on the ground, simply, that, instead of a "total failure" to comply with the act, there was, in fact, substantial compliance with it, and that this is sufficient. Mr. Justice Walling, delivering the opinion of the court, points out that the holder of the note, when he handed it to the prothonotary to have it entered, stated to him his precise address, and that this was endorsed on the note. Plaintiff's address was also noted on the record. This was held to be a sufficient compliance with the act. The Supreme Court decision goes no farther than to hold that that part of the act which requires a separate slip or certificate to be filed, showing the plaintiff's precise residence address, is directory only and need not be literally complied with to obtain a valid judgment. But that ruling is predicated, at least by implication, upon a substantial, even if informal, observance of the act. It is not held that no compliance whatever is required by the plaintiff, although the court points out that the act "imposes no penalty for its violation." The only penalty that can be invoked, therefore, must be imposed by the court, and that is in striking off the judgment; and it must be visited upon the plaintiff, who is ignorant and innocent, and not upon the officer, who is negligent. It is true, as Mr. Justice Walling observes, that "the prothonotary might, in a proper case, be liable for any damages resulting from his failure to comply with the statute," but that does not save the plaintiff in his immediate situation.

In the instant case, there has admittedly been a "total failure" to comply with the statute. If such had been the situation in the Deibert case, as we read and understand Mr. Justice Walling's opinion, the Superior Court would not have been reversed. ". . . Where, as here [the opinion says], *the required information appears upon the record*, it is not necessary to punish innocent plaintiffs because of the officer's neglect, more especially where no possible harm has resulted." This can be understood in only one way: If the "required information" does not appear upon the record, and if in every other manner there has been a total failure to comply with the mandate of the statute, it is necessary to punish the plaintiff by striking off the judgment.

But does the petitioner for the rule in the case before us have standing to invoke this penalty? Isidor Cohen, the judgment debtor and defendant, does not complain. It is not alleged that he does not owe the amount of the judgment or that it was procured by fraud or collusion. The sole ground upon which we are asked to strike it off is the prothonotary's failure to observe what Judge Keller in the Deibert case referred to as "merely a step in the entry of the judgment." The judgment, of which the certificate of residence is not a part, was entered. Cohen might object to its regularity because it affects him. It does not affect the petitioner. Her mortgage is as good now, no better or worse, than it was when she received it, and so is the bond. Because it was of record she knew about the Silverstein lien when she loaned Cohen the money and accepted the mortgage. What standing, then, does the petitioner, a third party and a stranger, have to ask the court to strike down a judgment about which the debtor does not complain? While its entry may have been irregular, it stands as a judgment, and it can be attacked only by the debtor defendant.

In taking this view of the matter, we are not without abundant authority. The same question was presented as early as Hauer's Appeal, 5 W. & S. 473, and decided by Chief Justice Gibson. He said: "When a stranger to a judgment buys land by which it is bound, he knows what he is about; and I am unable to understand, how an error in the concoction of the lien which does not touch the words between the original parties, can do him a wrong to entitle him to a remedy in any shape. He contracts to pay a price proportionate to the value of the land, subject to the encumbrance; or if not, then the price of a clear title, warranted by the vendor's covenant: and in either case, it rests with the vendor to vacate the judgment, not with him. By avoiding an encumbrance, subject to which he has purchased, he would increase the value of what he got without paying an increased price for it; or give to younger lien creditors a priority at the expense of an older one, which was not originally designed and which none but the debtor had a right to control. If any one is injured by the defects of such a judgment, it is the debtor; and he is the party to correct them. A creditor may, indeed, be injured by a collusive judgment for a fictitious debt which would sweep away his source of payment, and may consequently avoid it collaterally for the fraud; and a terre-tenant also may avoid such a judgment in the same where it would be a fraud upon his title—as was shown by authority in Campbell v. Kent. The question in a contest with strangers is not whether the judgment is erroneous but whether it is fraudulent ; and Lord Holt doubtless meant no more in Proctor v. Johnson, 2 Salk. 600, when he said, in reference to a defense by terre-tenants to a *scire facias* on a judgment in ejectment, 'that strangers may falsify, but those that claim under the judgment are estopped and bound by the judgment'—a *dictum* which seems to have been misapplied in Ulrich v. Voneida. A creditor, as I have said, may abate a fraudulent judgment for a pretended debt, but he cannot abate an erroneous one for a *bona fide* debt to gain priority by it, for he was entitled to no priority at the date of the judgment and its erroneousness was no wrong to him."

This doctrine has never been modified or departed from. Thus it is reiterated in Drexel's Appeal, 6 Pa. 272, where the court, in a *per curiam,* says: "In this case, as in that (referring to Hauer's Appeal, *supra*), it (the judgment) might have been reversed on a writ of error or set aside in the court below, on motion, but only at the instance of the defendant; never at the instance of a stranger. As long as the party injured by the irregularity submits to it, no one else can complain, for a third party has a right to interfere

with a judgment only when it is collusive." Again, in Davidson *v.* Thornton, 7 Pa. 128, the rule is once more enunciated by Chief Justice Gibson, where he says: ". . . a judgment confessed in a district court on a warrant to confess in a court of common pleas, and which was consequently entered without the semblance of any authority, could not be set aside, directly or collaterally, at the instance of a subsequent judgment creditor." In Holshue *v.* Morgan, 170 Pa. 217, the same doctrine was applied. In Milleisen *v.* Senseman, 4 Pa. Superior Ct. 455, a part of the syllabus reads as follows: "An actual but irregular judgment entered on the records of a court without authority can only be reversed on a writ of error or set aside in the court below, on motion; and only at the instance of the defendant, a stranger or third party has a right to interfere with the judgment only when collusive." In Bank *v.* Tanning Co., 170 Pa. 1, it was said: "It is only for fraud that a solemn judgment of a court of record may be attacked by third parties;" citing Gordon *v.* Preston, 1 Watts, 385, and Drexel's Appeal, *supra.* See, also, Sherrard *v.* Johnston et al., 193 Pa. 166. It seems unnecessary to cite further authority to sustain the view we take of the matter.

Now, Nov. 5, 1928, rule discharged. From Henry D. Maxwell, Easton, Pa.