# Dougherty's Estate.*

An amount of ground-rent, the arrears of several years, is payable out of the proceeds of a sale by the sheriff of the premises out of which the rent is payable, although during all the time the rent was accruing there was property on the premises which might have been distrained; but it does not follow that interest will be allowed upon such arrearages.

A *scire facias* will lie in the Common Pleas of Alleghany county, and may be there prosecuted to judgment, after the original jurisdiction of that court was transferred to the District Court.

A substantial variance between the recital in a writ of *scire facias* and the judgment to be revived, would break the continuity of the lien; but if the objection be formal and technical only, it will not affect the lien of the original.

A judgment upon a writ of *scire facias quare executio non* has the effect of a judgment to continue the lien.

Informalities in a writ of *scire facias* to revive a judgment cannot be taken advantage of by a stranger to the judgment.

On an appropriation of the proceeds of a sale of real estate by the sheriff, judgment creditors may avail themselves of a right to set aside a judgment given and obtained by collusion for the purpose of defrauding them; but they cannot thus attack a judgment on the ground that the defendant in it was overreached or taken advantage of by the plaintiff with regard to its consideration.

THIS case came up on an appeal by Tiernan, Campbell & Co. from the decree of the District Court of Alleghany county, appropriating the proceeds of the sale of the real estate of John Dougherty, deceased.

The report of the auditor to whom the case was referred, presents clearly the facts and questions of law which arose.

The real estate of John Dougherty, situate in the city of Pittsburgh, on the corner of Wood street and Virgin alley, was levied on at the suit of Tiernan, Campbell & Co. against the administratrix of said Dougherty, and sold to George Bailly on the 16th October 1843, by sheriff Weaver, for the sum of $4000. The costs of said sale amounted to $47.25. John Dougherty died the 21st January 1841, in the actual possession of the said real estate, leaving a widow and five children in their minority. In 1834 he purchased the said real estate from William Leekey, who had purchased the same from William Porter, as appears by the following deed dated 23d September 1806, and recorded:—"The said William Porter, for the consideration therein mentioned, grants unto the said William Leekey, his heirs and assigns, the before described lot of ground, and reserving nevertheless unto him the said William Porter, his heirs and assigns, the sum of $50

---

* This case was argued at September Term 1844.

[Dougherty's Estate.]

annually, with the usual clause of distress, &c.; and that if goods and chattels cannot be found on the described premises sufficient to pay the arrearages of rent, to enter into all the houses, buildings and enclosures on the premises, or any part thereof, and to rent to any person or persons for such length of time as may be sufficient to discharge the said rents; but in case of neither goods and chattels nor buildings being found on the said premises for the purposes aforesaid, and the said rent happens to be in arrears to the amount of $100, then and in that case it shall and may be lawful to and for the said William Porter, his heirs and assigns, to take possession of said premises, and to hold, occupy, possess and enjoy the same, or dispose thereof at pleasure, without the let, hindrance or molestation of the said William Leekey, his heirs or assigns, as though this indenture had never been made."

Dougherty had full notice of this reservation, and bought subject to it. From and after the purchase by Dougherty until the time of sale (16th October 1843) by the sheriff, and until the present time, houses and buildings were erected on the before described premises; and the witnesses produced before the auditor also proved " that from the time Dougherty purchased until his death in January 1841, there were at all times sufficient goods and chattels on the premises to pay the annual rent." After the death of Dougherty, the widow and heirs continued to occupy the same premises until the sale to George Bailly. A warrant of distress was issued by the heirs of William Porter on the 2d October 1843, to collect the arrears of rent owing on said deed, and goods and chattels to the amount of $25.86, after deducting costs of sale, could only be found on the premises.

The heirs of the said William Porter, by A. Brackenridge, Esq., now claim out of the proceeds of the sheriff's sale to Bailly, and in pursuance of the reservation as aforesaid, the following amount, to wit:

From 1st January 1834, to 1st October 1843, the annual
 rent of $50 per annum, amounting to - - - $487.50
And give credit for (as paid by Dougherty) - $163.00
Raised on aforesaid distress, - - - 25.86 188.86
                 ——————
  Balance of rent due, - - - - - $298.64
Interest on $187.00 from 1st January 1841,
 to 16th October 1843, time of sale, - - $31.31
Interest on half yearly payment since, - 12.60 43.91
                 ——————
  Total amount of claim, - - - - - $342.55

The creditors object to the payment and allowance of said claim:

1. That no part of the said claim ought to be allowed out of the proceeds of sale; that resort ought to have been had to the premises.

[Dougherty's Estate.]

2. That (if any) not more than one year's rent should be allowed.

3. That interest ought not to be allowed.

After hearing the creditors and claimant by their counsel, the auditor allows the amount of rent claimed, being $298.64, and rejects the claim for interest.

No. 2. That the judgment entered No. 192 of December Term 1833 in the Common Pleas, in favour of William Leekey and Robert Davis against John Dougherty, on the 4th February 1834, is the first lien, and is a conditional judgment to secure the payment of two notes and interest, as appears by the bond upon which the said judgment was entered; that the judgment was revived and lien continued until the time of sale aforesaid; that plaintiff assigned one of the notes to Alexander Brackenridge, Esq., and a part of the other to James S. Craft, Esq.; that there is now due and owing on the said judgment to the assignees the sum of $954.58, and costs $17.17. There being no objection made, this amount is allowed, and the respective amounts due claimants appears in annexed statement.

No. 3. That the judgment No. 193, December Term 1833, of Common Pleas in favour of William Leekey for use of James S. Craft against John Dougherty, was entered on the 4th February 1834, and regularly revived and lien continued until time of sale aforesaid, if the return of sheriff is not satisfaction; that on the 4th November 1841, the same was liquidated, and after deducting credits, judgment was entered for $54 and costs; that the costs then and since accrued amount to $25.79, and that a *fieri facias* issued to December Term 1841, and a levy made on the before described premises, and inquisition held and extended, and rent assessed at $400 per annum; and to March Term 1842, No. 490, *Lev. Fas.* issued, and sheriff Weaver returns on the writ endorsed —" Property delivered to plaintiff, and prothonotary's and sheriff's costs paid by plaintiff, 8th March 1842."

James S. Craft, Esq. claims to be allowed the amount of this judgment, (being $62.48, debt, interest and costs), alleging that he has not received the same or any part of the above amount; that he did not receive the actual possession of the premises from the sheriff; that the widow and heirs of John Dougherty were then in possession as heirs; the deputy sheriff being called on corroborates the statement of Mr Craft that he did not deliver the actual possession, as Mrs Dougherty and her children (heirs aforesaid) were then in possession.

Having heard the party, &c., the claim of Mr Craft for amount of this judgment is rejected; the return of the sheriff is conclusive evidence upon the auditor.

No. 4. The next judgment in its order is in favour of George Bailly against John Dougherty, No. 249, of October Term 1838,

[Dougherty's Estate.]

and revived and lien continued until sale aforesaid.  On 4th November 1839, the said judgment was liquidated at $2746.86, and the costs $18.50.

Tiernan, Campbell & Co. appear by their counsel, and object to the above judgment of George Bailly being allowed, &c.; that it is not valid; that it is fraudulent, &c., and given without consideration, and ask that it be rejected, and that the proceeds be applied to the judgment of Tiernan, Campbell & Co. against John Dougherty, No. 474, July Term 1839, and entered on the 21st August 1839, in the District Court, the debt and interest being at the time of the sale (16th October 1843) $2595.15, and being the next lien to that of Bailly; and that if there be any surplus, it be applied to the subsequent judgment in their proper order, &c.

After hearing the claim of Tiernan, Campbell & Co., it is rejected, the auditor not having authority to try the matters alleged by claimants; and allows the judgment of Bailly so far as there are assets to pay the same, to wit: the sum of $2653.86, and remaining unpaid $762.60, and interest from 16th October 1843.

Tiernan, Campbell & Co. filed exceptions to the report:

1. That the auditor erred in applying the proceeds of the sale to the payment of the ground-rent.

2. In allowing the judgment of Bailly to be paid.

3. In refusing to apply the proceeds to the payment of the judgment of Tiernan, Campbell & Co.

On the hearing of these exceptions the following proceedings were had:

In the matter of the distribution of the proceeds of the sheriff's sale of the real estate of John Dougherty, deceased:

And now, viz: January 27th, 1844, upon motion of James Dunlop for Tiernan, Campbell & Co. and Paul Morrow, and on the annexed affidavit of Margaret Dougherty, the administratrix of said John Dougherty, the said Tiernan, Campbell & Co. and Paul Morrow, being judgment creditors of said Dougherty, the court are requested to grant the said creditors a feigned issue to ascertain if the said judgment of George Bailly against the said John Dougherty, and the judgments of revival thereon, were not covinous as regards creditors, and obtained without consideration, or whether they or the judgment of George Bailly are entitled to be paid out of the proceeds of the sale of the real estate of the said John Dougherty, the said judgment of George Bailly being a judgment of the Court of Common Pleas.

Court refused to make the order requested, as the validity of said judgment had already been twice adjudicated and passed upon in the Court of Common Pleas.

*Mrs Dougherty's Deposition.*—That the bond on which the above

[Dougherty's Estate.]

judgment was entered was written by George Bailly in the store of my husband, John Dougherty the defendant. No one was present when they were about doing so but Bailly, Dougherty and deponent. That Dougherty requested defendant to withdraw, which she did, and afterwards looking through the glass door opening into the back room, saw Bailly writing a paper with a pen and another paper with a pencil. That Bailly and Dougherty immediately after went out, taking the paper writing with them, and leaving the one written with pencil, which had fallen on the floor, and which deponent supposes they forgot. They were gone about an hour and a half, and on his return deponent showed her husband the paper in pencil, which was an agreement to pay a debt due to Shipton & Taylor, or some such firm, by Dougherty, naming the amount of the debt as $900. Dougherty said that was the consideration of the bond, and that Bailly was to pay that and some other debt deponent don't recollect. Dougherty often complained to Bailly in deponent's presence that he had not paid Shipton, Taylor & Co. At one of their conversations, Bailly denied that Dougherty had such paper requiring him to pay such debt, and on Dougherty's producing the paper, he said that's right, that's all very well. This was after Shipton, Taylor & Co. had sold the goods of Dougherty on an execution.

Deponent carefully kept the paper, and showed it to Job Patterson the deputy sheriff, when he made the levy, and complained of Bailly not paying the debt. Deponent also showed the paper to Joseph O'Brian. After Dougherty's death, Bailly opened the secretary at deponent's dwelling by force, and took away a bundle of notes that Dougherty had paid, and this paper in pencil spoken of. Deponent protested against his doing so, and he got into such a passion as alarmed deponent very much, and caused her to desist. Deponent charged Bailly afterwards with taking away the papers before Joseph O'Brian two or three times. Deponent has heard that Bailly paid part of the Shipton, Taylor & Co.'s debt in the life of Dougherty.

Deponent further states that Dougherty was a good, easy man, who confided entirely in Bailly, who imposed on him to a great extent, and that Dougherty was a man given to intemperance. The Tuesday before Mr Tiernan's application to open the judgments of Bailly *v.* Dougherty, Bailly desired deponent in her own house not to appear against him, and not to say all deponent could say on the subject, and that he would release the judgment to deponent and her children if it do them any good."

The following is a copy of the writ of *scire facias* which was the subject of objection.

*Alleghany County, ss.*

The Commonwealth of Pennsylvania to the Sheriff of Alleghany county, greeting:

[Dougherty's Estate.]

Whereas, William Leekey and Robert Davis, lately in our Court of Common Pleas, before, &c., at, &c., to wit: February 4th, 1834, by the judgment of our said court recovered against John Dougherty, $2000 of debt and $10 for their costs, &c.

And whereas, by the said William and Robert, we have in our said court understood, &c. Yet the execution thereof remains to be made, &c.

We do command you that by good and lawful men of your bailiwick you give notice to the said John Dougherty that he be and appear before, &c., to show cause why the said William and Robert ought not to have their execution against him for their debt and costs aforesaid, according to the form and effect of the recovery aforesaid, if they still think fit, and further to do and receive whatsoever our said court shall then and there of and concerning him in this behalf consider.

The court below (GRIER, President) overruled the exceptions, and confirmed the report of the auditor.

*Dunlop*, for appellants.
*M'Candless*, for appellees.

The opinion of the Court was delivered by

GIBSON, C. J. — The arrears of ground-rent due to the heirs of William Porter were properly allowed to be taken out of the fund in the first instance. *Bantleon* v. *Smith* has never been shaken as a precedent, but more than once affirmed. Nor does a reservation of rent in a conveyance in fee stand on the foot of a reservation in a lease, which has no other preference than is given to it by the Act of 1772. That Act allows the landlord to come in for a year's rent before execution creditors, and it is consequently an enabling one; but it would be the reverse were it applied to a ground-rent landlord, who is preferred even to judgment creditors. A lessor's preference regards the proceeds of chattels; a ground-rent landlord's regards the proceeds of land; the one is limited to the rent of a single year; the other extends to all the arrears without stint.

The exceptions to Leekey's judgment are multifarious.

It is alleged that no *scire facias* to revive it lay in the Common Pleas after the original jurisdiction of that court was transferred to the District Court. The writ was a *scire facias* on the *Stat. West.* 2; and as it was pending in the Common Pleas when the Act to transfer " all suits and causes pending" in that court went into effect, it is argued that, being a pending suit, it was removed to the District Court in contemplation of law; consequently that the Common Pleas had no jurisdiction to proceed on it. If that be so, the original judgment has lost its lien. But though a *scire facias* is said to be so far an action that the parties to it may

plead to issue, it is in truth no more than a judicial writ which lies only in the court where the record remains. 2 *Bac. Abr.* 356. In *Wright* v. *M'Nutt*, (1 *T. R.* 389), it is said not to be a new suit, but a continuation of the old one; in *Phillips* v. *Brown*, (6 *T. R.* 282), that it is a step towards execution; and in *Dixon* v. *Heslop*, (*Ibid.* 366), that it is merely the handmaid of the original cause. Where an execution would be out of time, a *scire facias*, being the precursor of it, is necessarily in the same court; for it would be strange if the execution was awarded by the one court and issued by the other; or if the Court of Common Pleas was at liberty to execute its own judgments within the year and a day, but necessitated to send them to the District Court for execution at a later period. If the judgment remains in the Common Pleas, a step preparatory to execution of it, taken in another court, would be an incongruity which ought, where it may, to be avoided. It is doubtless true that our judgment on a *scire facias post annum et diem*, is not, as in England, a bare award of execution; but that it is itself a judgment *quod recuperet* on which the execution commonly issues as on an original one; still an accidental difference of practices ought not to be allowed to change the nature of the process. If the Common Pleas had power to execute its judgments in any case, it must have had all the ancillary powers necessary to the exercise of it in every case; for it would be strange if that court might have tried an issue on a *scire facias* sued out after the Act which constituted the District Court had gone into effect, and yet could not have tried such an issue if the writ had been sued out before it. The true interpretation of the statute is that it removed causes pending on original process; not those that had been proceeded in to judgment.

It is objected, also, that the *scire facias* did not accurately recite the judgment to be revived; and it is certain that a substantial variance in that matter would break the continuity of the lien. The judgment was for $4000, the penalty of a bond with condition to secure a note for $1590, and another for $400; and the award of execution was for $2000. Thus the record was described as what it actually, though not technically, was—a judgment for the real, not the nominal debt; so that the variance, though formal, was unsubstantial. The framing of our writs is injudiciously left to the prothonotaries, who have seldom any knowledge of forms; and all that we can do in these matters without injustice to suitors, is to hold fast to substance. In *Arrison* v. *The Commonwealth*, (1 *Watts* 374), the name of a different plaintiff was introduced, and the variance was necessarily held to be substantial; in the case before us, the judgment is in substance what it was recited to be.

It is further objected that the writ was not in the form prescribed by the Act of 1798; and that the judgment on it was that the plaintiff should have execution for the sum recovered; not

[Dougherty's Estate.]

that the lien should be continued, according to the exigence of that statute. To say nothing of the principle which precludes a creditor from taking advantage of an irregularity in an antagonist lien, it is enough for the latter part of the objection that the continuance of the lien is an incident of the judgment. The writ is a *scire facias quare executio non;* and, as the judgment is general, it is to be taken for the appropriate one. Now, though there is no reported decision directly on the point, we have always allowed to a judgment of revival the effect of a judgment to continue the lien; as may be seen in *Pennock v. Hart,* (8 *Serg. & Rawle* 369). It is notorious, that by reason of the slowness of the profession to leave a beaten track, no alteration was made for a long time in the form of the process and judgment, and that any alteration was made at all, is perhaps owing to what fell from me in that case. For twenty years the attention of the profession had not been drawn to it, and judgments continued to be revived in the old way, so that to doubt the efficacy of the practice now would produce a scene of wild and strange confusion. If ever there was a practice to which the maxim of *communis error* should be applied with conclusive force, it is this. The statute is only directory as to the form; and at the end of half a century we are not going to overwhelm the holders of titles in dismay, by overturning all that has been informally done under it, when there is not even a precedent the other way. No more was determined in *Gasche v. Fetterman,* (3 *Watts & Serg.* 351), than that a plaintiff who proceeds by *scire facias quare executio non,* before he has a right to execution at all, shall not elude his want of a case by turning his writ into a *scire facias* to continue the lien, and have judgment for that, when he could not have an award of execution. That was a question of error, however—not of lien—for had the judgment been allowed to stand, there is no doubt that the error would not have deprived it of its effect as a judgment to continue the lien, and that a stranger could not have taken advantage of it.

The objection to Bailly's judgment is unfounded; not because the matter had been twice examined, but because it is not pretended that the judgment was *collusive.* The application of the administratrix was to *open* it on the ground that the intestate had been *overreached;* and the application of the creditors to *vacate* it was founded on no principle whatever. With the application of the administratrix the creditors had nothing to do; but if the judgment were collusive, they might abate it collaterally; and though they have sometimes been allowed to intervene directly, such a practice is irregular. Where a collusive judgment comes into collision with their interests, they may avoid the effect of it by showing it to be a nullity as to themselves; and in doing so, they do not impair its obligation between the original parties, upon whom it is undoubtedly binding, a fraudulent judgment, like a fraudulent deed, being good against all but the interests intend-

[Dougherty's Estate.]

ed to be defrauded by it.   But they cannot call upon the court to vacate it on the record, which would annul it as to the whole world.   It is contended, however, that the judgment is fraudulent, because he who confessed it was defrauded.   A surreptitious judgment, however, is fraudulent only as to the immediate parties; not by the 13 *Eliz.* against creditors, who certainly cannot go behind it to try over again a defence which their debtor had made, or was competent to make.   There was no pretence that this judgment was collusive; and as the appellant had not laid a ground for an issue, it would have been irregular to award it.

Decree affirmed.