## GATES *v.* JOHNSTON.

In an issue formed to try whether a judgment was fraudulent as to creditors; a judgment creditor of the defendant, who is not a party to the issue, may become a competent witness, by disposing of his judgment; provided the act was *bonâ fide*, and not dictated by necessity to give it effect, by his testimony.

Where the issue was formed to try, on the pleas of *non assumpsit* and payment, with leave, &c., " whether any, and, if any, *what amount* was due from the defendant to the plaintiff, at the time the judgment was confessed," it was *held*, that, in strictness, the form of the issue was wrong, and that it should have been to try whether the judgment was collusive as to creditors, or not.

Under the issue formed to try the questions involved in this case, the directions in the charge of the court, that a judgment fraudulent in part is void in the whole, as to creditors, was *held* not to be error.

Where a plaintiff is not prevented, by the form of the issue, from putting forth the strength of his case, and has not been prejudiced by the informality, he will not be permitted to assign it for error.

ERROR to the Common Pleas of Huntingdon county.

*May* 25.   This was an issue directed by the court of Common Pleas, and formed to try, on the pleas of *non assumpsit* and payment, with leave to give the special matters in evidence, "whether any, and, if any, *what amount* was due," from James R. Johnston, the defendant in error and the defendant below, to Martin Gates, the plaintiff, at the time the defendant confessed judgment to the plaintiff.   It appeared by the paper book, that on the 9th day of August, 1842, a judgment for $7631 25 was confessed by virtue of a warrant of attorney, and entered on record, in favour of the plaintiff against the defendant.   The plaintiff and defendant were brothers-in-law, and at the time the judgment was confessed, the defendant was in failing circumstances, and some of his creditors were urging him for payment of their claims.   On the 16th of June, 1843, the court, upon the application of creditors of the defendant, granted a rule to show cause, why this judgment should not be opened, &c. After argument, the court (WILSON, President) refused to open the judgment, but directed an issue to be formed on the record of the judgment, between the parties to the same.   The judgment was to remain as the statement of the plaintiff, and to be taken as *primâ facie* evidence of his claim.   To which, the pleas of *non assumpsit* and payment, with leave, &c., were to be entered, and the case put to issue on these pleas.   On the issues thus formed, the questions before stated were to be tried.   Of the mass of testimony given on the trial, it is only material here to refer to that of Nicholas Hewit, given upon his examination on his *voire dire ;* and of the twelve bills

of exception taken to the admission and rejection of evidence, it is only necessary here to notice the one taken to the admission of the said Hewit as a witness. On the trial, Nicholas Hewit was called by the defendants, and offered as a witness. The plaintiffs objected to him, on the ground, that he was a judgment creditor of the defendant, and interested in avoiding the judgment of the plaintiff. Hewit said in substance, on his *voire dire*, "I am not a creditor of James R. Johnston. We brought a suit, in the name of Hewit and Higgins, for the use of Samuel Richards, against James R. Johnston. Higgins and I attended to the suit. I have no interest in that suit. We sold a property to Richards; it was the property James R. Johnston lived in as our tenant. We traded the lease to Richards with the property. This suit was for the rent; I suppose we sold to Richards in the year 1840, about the time of Johnston's failing. Richards objected taking Johnston for the rent, and we brought suit against Richards for the balance of the property. Our suit against Richards we have not prosecuted. Last spring, Mr. Higgins and I concluded we would bring suit against Johnston, for Richards, for the rent. There is a balance of purchase money due us from Richards. We have settled it with him, and taken his judgment for the balance. We are not to get any part of the judgment against Johnston. The judgment against Johnston is now for the use of Higgins. He took it in the settlement, bought it of me; I mean the judgment against Johnston. Higgins asked me what I would take for it. He said he would give me $150. I told him I would take it, and he gave it to me. This issue was then pending. I do not know that Mr. Higgins is aiding and assisting in this defence. Mr. Higgins did not pay me this money; he gave me a due-bill; there is a settlement between us; he may owe me all, or a part of it only. I do not recollect exactly, when the arrangement was made between me and Mr. Higgins; it was some time this spring. I had no conversation, that I recollect of, with Mr. Higgins, about becoming a witness in this suit. I believe Mr. Calvin did speak to me about it. I think Mr. Calvin said Mr. Higgins would buy it; I suppose for the purpose of becoming a witness; do not know that he said so. Likely, it was the intention of Higgins buying it, that I should be a witness. I had no understanding about it. The fact of my being a witness was spoken of, and Mr. Calvin said Mr. Higgins would buy my interest. My understanding was, that Mr. Higgins was buying it, for the purpose of my being a witness. I suppose it was to remove the difficulty of my being a witness. I suppose it was

E 2

for that purpose. Mr. Richards I think was at the arbitration, and I think said, he had not authorized the suit."

The assignment of Richards to Higgins, of the judgment of Hewit and Higgins, for the use of Richards against Johnston, and also the assignment of Hewit, transferring all his interest in the same judgment to Higgins, were then proved and read in evidence, by the defendant. Nicholas Hewit was then called again, by the defendant, and examined further on his *voire dire*. He said in substance, " that they settled with Richards, at the time he assigned the judgment of Hewit and Higgins, for the use of Richards against Johnston, to Higgins ; that he never considered he had any interest in the judgment, until Higgins, after the assignment of the judgment to him by Richards, said he would take the judgment and buy my interest in it."

Nicholas Hewit was then sworn in chief, under objection by the plaintiff.

The only material questions raised here were, whether Nicholas Hewit was a competent witness; and whether, under the issue as formed, there was not error in the direction of the court, in their charge to the jury, " that if the amount for which the judgment was confessed, was not due to Gates, the judgment would be fraudulent and void, as it respects the other creditors."

The jury found for the defendants ; whereupon, the plaintiff sued out this writ of error, and removed the record to this court.

*Wilson* and *Miles*, for plaintiffs in error.
*Calvin, Bell* and *McAllister*, contrà.

*June* 1.   GIBSON, C. J.—Nothing contained in the bills of exceptions to evidence is worthy of particular examination, except the objection to the witness, Hewit, who, as a judgment creditor of the defendant, Johnston, is said to have been interested in avoiding the plaintiff's judgment. But he was not a party to the issue, and might therefore become a witness by disposing of his own judgment, provided the act were *bona fide*, and not dictated by necessity to give it effect, by his testimony. He probably had no interest to get rid of; but he transferred it, whatever it was, in pursuance, not of his own overture, but that of the purchaser of it, who desired to make him a witness in support of other demands. The debt may have been perfectly secured by the judgment ; but if it even were in jeopardy, his case does not fall within the principle of the recent decisions.

A single error is assigned in the charge, and it is unfounded. The issue was formed to try, on the pleas of non assumpsit and payment, " whether any, and, if any, *what amount* was due from the defendant to the plaintiff." It was evidently thus moulded, under a belief that the judgment would be void as to creditors only for the excess: which, to be sure, sorts ill with the accurate and sound direction in the charge, that a judgment, fraudulent in part, is void in the whole. The statute certainly makes it so. Why then inquire how much was fairly due between the original parties, who were concluded by the judgment as an estoppel, if it would be no security for the sum found, between the plaintiff and the creditors? Strictly considered, the form of the issue was wrong; but to attain even an approximation to justice, we are often compelled to make great allowance for want of precision in these matters, and to look to substance rather than to form. It redounds greatly to the credit of the judge, however, that he did not follow the old, clumsy, unprofessional and barbarous practice, of *opening* the judgment between the original parties, who must be bound by it between themselves, whatever may be the event between the plaintiff and the creditors, but awarded a collateral issue to try, not indeed expressly whether it was *collusive*, as it ought to have been, but whether it was good for any part of the debt against the creditors; and we cannot avoid seeing that the plaintiff was not prevented, by the form of it, from putting forth the whole strength of his case. Of what, then, has he to complain? Had the jury found that a part of the amount was fairly due between the parties, the statute would nevertheless have avoided the whole judgment as to the creditors; and as the plaintiff has not been prejudiced by the informality, he shall not assign it for error.

Judgment affirmed.