## Thompson's Appeal.

1. An auditor appointed to distribute funds arising from a sheriff's sale, must treat a judgment as conclusive. He has no right to disregard it, or to allow any later lien priority over it.

2. An issue was awarded between a prior and subsequent lien-creditors, to try whether the bond on which the first judgment was entered "was executed under a false representation as to the amount of said bond." It was found that the bond had been executed under such representation. The judgment was conclusive against the subsequent judgments notwithstanding this finding.

3. Only the defendant in the judgment could set it aside for such reasons.

4. Judgment-creditors may attack a judgment collaterally when it is a fraud upon them, but not merely because it is a fraud on the debtor.

5. A fraudulent judgment, like a fraudulent deed, is good against all but the interests intended to be defrauded. But they cannot call upon the court to vacate it on the record, which would annul it as to the whole world.

February 4th 1869. Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Appeal from the decree of the District Court of *Philadelphia:* No. 15, to January Term 1868.

The decree in the court below was the confirmation of the report of an auditor distributing the proceeds of the sheriff's sale of the real estate of Patrick Kelly. John Thompson was the appellant.

The fund in court was $7015, and it was referred to D. P. Brown, Jr., as auditor, to report distribution. There were a number of judgments against Kelly presented to the auditor.

1. John Thompson, entered November 28th 1862, for $6000; 2. Ferree & Co., entered June 17th 1863, for $5000; 3. John McCormick, entered August 25th 1863, for $3000; besides others not reached in any event. There was also a claim of $476.22, for taxes on Kelly's real estate.

The right of Thompson to receive the amount of his judgment was resisted by the subsequent creditors, who alleged, that $600 was the actual sum for which the judgment had been given, that it had been paid; and that nothing was due on the judgment. They gave evidence to sustain the allegation.

Thompson gave no evidence, but demanded an issue to try, "whether the bond upon which the judgment of John Thompson v. Patrick Kelly was entered was, or was not given for a good, valid and sufficient consideration; and whether the amount of said bond still remains due and unpaid."

[Thompson's Appeal.]

The auditor reported the demand to the court, and an issue was awarded to try "whether the bond to Thompson was executed by Kelly, under a false representation as to the amount of said bond." In this issue Ferree & Co., McCormick and the other subsequent judgment-creditors of Kelly were made plaintiffs, and Thompson defendant. A verdict was found for the defendant; the judgment on it was reversed by the Supreme Court, and a new trial awarded. On a second trial a verdict was found for the plaintiffs.

When the case came again before the auditor, Thompson offered to prove, that after the execution of the bond Kelly "acknowledged it to be correct and valid, stamped the bond with a United States revenue stamp, and gave validity to its execution."

The auditor declined to hear any testimony in respect to the judgment, because he considered that he was bound to regard the judgment on the feigned issue conclusive. He therefore reported the whole fund to the judgments of Ferree and McCormick, and to the Receiver of Taxes.

Thompson filed exceptions to the report of the auditor:—that he declined to hear the testimony offered, and to award the fund to him.

He also petitioned the court, setting out the proceedings, and alleging that after the execution of the bond, Patrick Kelly validated it by his acts and admissions, viz. :—

1. By his admission and acknowledgment to different parties after the execution of the bond and warrant that it was correct and valid, and that he had obtained the money for which they were given.

2. That after the entry of the judgment the defendant stamped the bond with a United States internal revenue stamp, and gave validity to its execution.

And prayed the court to award an issue to determine the above facts.

The court, Stroud, A. J., delivering the opinion, refused the issue, dismissed the exceptions, and confirmed the report of the auditor.

On appeal to the Supreme Court, the appellant assigned this decree for error.

*T. R. Elcock* and *D. Dougherty*, for appellant, referred to Act of June 16th 1836, § 86, Pamph. L. 777, Purd. 446, pl. 104; McDaniel *v.* Haly, 1 Miles 353; Leeds *v.* Bender, 6 W. & S. 318; Dyott's Estate, 2 Id. 567; Ellmaker *v.* Insurance Co., 6 Id. 442; Dougherty's Estate, 9 Id. 189; Watson *v.* Willard, 9 Barr 89; Lewis *v.* Rogers, 4 Harris 21; Stewart *v.* Stocker, 1 Watts 135; Trimble's Appeal, 6 Id. 133; Reigart's Appeal, 7 W. & S. 268; Overholt's Appeal, 2 Jones 224; Bichel *v.* Rank, 5 Watts 140; Tomb's Appeal, 9 Barr 61; Schick *v.* Pharo, 13 Wright 384.

[Thompson's Appeal.]

*J. C. Longstreth* and *J. G. Brinkle*, for appellees, cited Dougherty's Estate, 9 W. & S. 189; Ferree *v.* Thompson, 2 P. F. Smith 353; Act of 20th April 1846, § 2, Pamph. L. 411, Purd. 447, pl. 105; Garrison's Appeal, 2 Wright 531; Seip's Appeal, 2 Casey 176.

The opinion of the court was delivered, February 13th 1868, by

STRONG, J.—The auditor and the learned judge of the District Court fell into error by overlooking what was determined in the issue directly before the court. When the auditor entered upon the duties of his appointment, Thompson, the appellant, presented a judgment against Kelly, the defendant in the execution, for $6000. It was apparently the first lien upon the property which had been sold, and the proceeds of sale of which the auditor was directed to distribute. Of course, as a judgment, it was conclusive upon the auditor. He had no right to disregard it, or to allow to any other lien a priority over it. Later judgment-creditors, however, attempted to show that Kelly had intended to give a judgment only for $600, and that such sum had been paid. If the facts had been so it would not have justified the auditor in treating it as anything else than a judgment for $6000. He was concluded by the record: Dyott's Estate, 2 W. & S. 567; Leeds *v.* Bender, 6 Id. 318; Ellmaker *v.* Insurance Co., Id. 442. But for some reason that we cannot understand, Thompson demanded an issue to try whether the bond and warrant upon which his judgment against Kelly had been entered, had not been given for a good, valid and sufficient consideration, and whether the amount of the bond and warrant remained unpaid. The court, however, did not award such an issue, but they directed an issue to try " whether the bond and warrant of attorney of Patrick Kelly, in favor of John Thompson, on which judgment was entered in the District Court of Philadelphia, was executed by said Kelly under a false representation as to the amount of said bond and warrant." The issue was tried and resulted in a verdict and judgment that the bond and warrant had been executed under such false representation. This being certified to the auditor, he set aside the judgment as a lien upon the fund for distribution, refused to receive evidence that after the execution of the bond and warrant, Kelly admitted its correctness and stamped the instrument with an internal revenue stamp, and awarded the fund in court to subsequent judgment-creditors. This distribution was subsequently confirmed by the court.

The fact must undoubtedly be considered as established by the result of the trial of the issue, that the judgment of Thompson against Kelly, or rather the bond and warrant of attorney upon which the judgment was entered, were executed by Kelly under a false representation as to the amount secured by them.

7 P. F. SMITH—12

[*Thompson's Appeal.*]

But what of that? The auditor and the court below thought it removed the judgment entirely out of the way so far as respects the subsequent judgment-creditors, and awarded the fund in court to the holders of those subsequent judgments, though they had been entered more than six months after the judgment of the appellant. This was giving undue effect to the fact established by the decision of the issue. Thompson's judgment was conclusive as against the creditors of Kelly, notwithstanding that fact. Kelly himself was the only person who could set it aside for such a reason, and in his favor the fact was not found. He was no party to the issue, as between judgment-creditors of Kelly claiming the fund, both the issue and the fact decided by it were immaterial. Judgment-creditors may attack a judgment collaterally when it is a fraud upon them, as when there has been collusion between the debtor and the creditor; but they cannot set it aside merely because it is a fraud upon the debtor. This was clearly shown in Dougherty's Estate, 9 W. & S. 189. Like the present case, that was a distribution of the proceeds of a sheriff's sale of real estate. Judgment-creditors objected to a prior judgment that it was fraudulent, and given without consideration, and they demanded an issue to try whether such were not the facts. The court below refused it, and on appeal to this court it was held that the refusal was right, because no collusion was alleged. Without collusion, the facts asserted, even if established, could have availed nothing to the junior creditors. Chief Justice Gibson, in delivering the judgment of the court, remarked that the application of the creditors to vacate the elder judgment was founded on no principle whatever. Where a collusive judgment comes into collision with the interests of creditors, they may avoid 'the effect of it by showing it to be a nullity as to themselves; and in doing so they do not impair its obligation between the original parties, upon whom it is undoubtedly binding; a fraudulent judgment, like a fraudulent deed, being good against all but the interests intended to be defrauded by it. But they cannot call upon the court to vacate it on the record, which would annul it as to the whole world. It is contended, however, that the judgment is fraudulent, because he who confessed it was defrauded. A surreptitious judgment, however, is fraudulent only as to the immediate parties to it; by the 13th Eliz., against creditors, who certainly cannot go behind it to try over again a defence which their debtor had made, or was competent to make." It is to be observed that no collusion between Thompson and Kelly is asserted. The exact contrary is the result of the issue, for if Kelly was defrauded into giving a judgment, it could not have been given with a secret agreement to defraud others. His consent was wanting.

The doctrine avowed in Dougherty's Estate has never been

[Thompson's Appeal.]

denied. It was substantially recognised in Lewis *v.* Rogers, 4 Harris 18, where the same judge said, "creditors can attack a judgment collaterally only for collusion."

Then what did it profit the appellees that the issue directed by the court had been found against Thompson? Let it be that the result of the issue is to be regarded as an established fact. Still the fact was impertinent to the inquiry whether Thompson's judgment was valid as against Kelly's creditors. On the record it appeared to be the first lien, and the appellees, though successful on the trial of the feigned issue, had showed nothing to abate the full force of the judgment as against themselves. The decree of the District Court must therefore be reversed.

The decree of the District Court is reversed, and the record is remitted with instructions to award distribution according to the rule laid down in this opinion.