# McElrath *et al.* versus The Pittsburg and Steubenville Railroad Co.

## Chapman's Appeal.

1. In distributing the proceeds of a sale of a railroad, &c., the master is limited to *distributing* the fund to the parties entitled under the decree; he cannot go behind the decree to inquire whether the parties claiming are entitled to a position different from that which the decree assigns them.

2. There were a first and second mortgage on a railroad. The trustee under the first filed a bill to foreclose and make the trustee under the second a party. A decree having been made postponing the second, a bondholder under it alleging error should ask for a review or a rehearing.

3. Bondholders under such mortgages are not parties; the true party is the trustee, and he is to be summoned to defend the interest of those claiming under the mortgage.

4. The bondholders are privies and may defend *pro interesse suo*, but their rights are affected by a decree against the trustee.

5. The bondholder is not as a creditor claiming a right to attack the decree

[McElrath *v.* Pittsburg and Steubenville Railroad Co.]

of an opposing creditor for collusion or fraud, between the plaintiff and defendant, but is affected by the decree against his own trustee.

6. In the distribution it was competent for one to claim that he owned bonds entitled to a dividend, which were presented and claimed by another.

7. Souder's Appeal, 7 P. F. Smith 498, recognised.

February 27th 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Exceptions by George M. Chapman to the report of Samuel G. Thompson, Esq., master, distributing the proceeds of the sale of The Pittsburg and Steubenville Railroad under proceedings at the suit of Thomas McElrath. (See 5 P. F. Smith 189, where the facts in the case are fully stated.)

In 1865, to October and November Term, No. 42, of the Western District of the Supreme Court, a bill was filed by McElrath, trustee under a first mortgage of The Pittsburg and Steubenville Railroad Company, against that company, Ambrose W. Thompson and Daniel Tyler, trustees under a second mortgage of the same company, and others.

The prayers of the bill were, that McElrath's mortgage might be declared to be the first lien and binding on the railroad, &c., that the amount due on it might be ascertained and the company decreed to pay, or in default, that a decree be made to sell the mortgaged premises.

On the 13th of May 1867, the Supreme Court decreed that McElrath's mortgage was the first lien; that the amount due on it was $865,234.06, which the company should pay to McElrath in ninety days, and in default, that McElrath as trustee sell the road, &c. The sale was subsequently made to William J. Howard for $1,960,000, and was confirmed November 20th 1867.

Amongst other claimants on the fund were George M. Chapman, holder of $30,000 of the second-mortgage bonds of the company, and also of a large amount of their certificates of indebtedness, and William J. Howard, the holder of all the first-mortgage bonds.

Before the master, Chapman offered to prove:—

1. The Pennsylvania Railroad Company from 1858 had been conspiring with others and contriving to get the ownership of the Pittsburg and Steubenville Railroad Company with its franchises, &c., in fraud of that company and its creditors.

2. The Pennsylvania Railroad Company under the name of The Western Transportation Company, leased The Pittsburg and Steubenville Company, December 30th 1857, and contracted, June 3d 1858, to build the road.

3. There was no such valid corporation as The Western Transportation Company, but it was a pretended corporation, in whose name The Pennsylvania Railroad Company was acting, to take the lease and make the agreement.

[McElrath v. Pittsburg and Steubenville Railroad Co.]

4. The Pennsylvania Railroad Company, by fraudulent breaches of the covenants in the lease and contract, brought insolvency on The Pittsburg and Steubenville Company and caused the sale of the franchises of that company under the decree in this case.

5. " The Pennsylvania Railroad Company, soon after the dates of the lease and contract, in pursuance of said fraudulent design and conspiracy, induced the holders of the first-mortgage bonds, who had acquired them prior to those dates, to deliver them to The Pennsylvania Railroad Company, or its president acting for it, in exchange for second-mortgage bonds. The exchange was procured by misrepresentations and deceptions and on conditions which were never complied with, and the holders of the second mortgage bonds so exchanged are entitled to the first-mortgage bonds which were given for them in exchange."

6. One of the breaches of the covenants in the lease and agreement was the failure to provide means for the payment of the interest on the mortgages, and thus was brought about the default which led to the sale.

7. The Pennsylvania Railroad Company as trustee, issued first and second mortgage bonds in violation of the agreement, for purposes, &c., not warranted and without authority and without any value or consideration to The Pittsburg and Steubenville Company.

8. The Pennsylvania Railroad Company was debtor to the Pittsburg and Steubenville Company for damages, &c., from breaches of the covenants to an amount larger than the amount of the bonds claimed by Howard.

9. The bonds presented by Howard belonged to The Pennsylvania Railroad Company, having been fraudulently bought in by that company with a view to purchase the road, &c., of The Pittsburg and Steubenville Company.

10. The Pennsylvania Railroad Company was the real plaintiff in this suit to effect the sale of the road, &c.

11. Ambrose M. Thompson, one of the trustees in the second mortgage, had no notice of the proceedings previously to the sale ; Tyler, the other trustee, acting in collusion with The Pennsylvania Railroad Company, and in fraud of the bondholders for whom he was trustee, accepted service of the bill, failed to answer, gave no notice to his co-trustee or the bondholders, abandoned all care in the matter, suffered a decree *pro confesso* against him, and decree for the sale of the road, &c.

12. The Pennsylvania Railroad Company, by reason of the foregoing facts, are estopped from any claim on the fund now for distribution, particularly from claiming for the first-mortgage bonds against the second-mortgage bonds, and each holder of a second-mortgage bond is entitled to claim as if a holder of the first-mortgage bond, of which he has thus been fraudulently deprived in the hands of that company.

13. " George M. Chapman is a holder of second-mortgage bonds amounting to $30,000, being bonds so fraudulently given in exchange for first-mortgage bonds now presented by The Pennsylvania Railroad Company, and also the certified estimates mentioned in the bill to the amount of $52,545, and claims for work and materials $277,000.   He had no notice of any kind."

The master being of opinion that all the matters presented by the foregoing offers had been considered and passed upon the proceedings for the sale of the road, &c., and that he was concluded by the decree, rejected the offers, excluded Chapman's claims from the distribution, and reported a dividend of the fund on the bonds, &c., presented by Howard.

Chapman filed exceptions to the master's report, viz. :—

The rejection of his offers of evidence and awarding the fund to Howard.

*E. S. Miller,* for exceptor.

*T. Cuyler,* contrà.

The opinion of the court was delivered, May 8th 1871, by

Agnew, J.—The railroad, property, estate and franchises of the Pittsburg and Steubenville Railroad Company, mortgaged to Thomas McElrath to secure the payment of $1,000,000 of bonds, were sold under a decree of this court for $1,960,000, and the distribution of this sum is the proceeding now before us.   The inquiry of the master was limited solely to the distribution of the money among the parties entitled to receive it under the decree. He could not go behind the decree to inquire whether it was rightfully made or whether the parties before him were entitled to hold a position different from that which the decree assigns to them.   If George M. Chapman, as a holder of bonds under the second mortgage of $500,000, was erroneously postponed in payment to the holders of the bonds under the first mortgage, it was his business to come before the court to review the decree against the second mortgage or obtain a rehearing.   The bondholders in such a mortgage as this is are not the parties to it, though they have rights under and claim through it.   The true party is the trustee to whom it is given as the security for all the bonds issued under it.   It would be impossible, and if possible, excessively inconvenient, to make all parties holding the bonds, which are separate instruments, parties to the decree of foreclosure and sale under the mortgage.   The bonds are payable to bearer and pass by delivery, and who the holders are after they pass into the current of business cannot be told.   Hence, the trustee is the party to be summoned to defend the interest of those who claim

[McElrath *v.* Pittsburg and Steubenville Railroad Co.]

under the mortgage. The bondholders are privies in interest, and may come in to defend *pro interesse suo*, but their rights are affected by the decree against their trustee. Chapman, therefore, as a holder of bonds under the second mortgage, is not a stranger claiming collaterally, but must come in under the mortgage. He does not stand in the attitude of another creditor claiming a right to attack the decree or judgment of an opposing creditor upon the ground of collusion or fraud between the plaintiff and defendant in the judgment, but he is affected by the decree itself against his own trustee. These principles will be found to be sustained by the following cases: Dougherty's Estate, 9 W. & S. 189; Dickerson's Appeal, 7 Barr 255; Thompson's Appeal, 7 P. F. Smith 175; Clark *v.* Douglass, 12 Id. 408. The bill was filed against the trustees of the $500,000 mortgage and the decree made against them. If there were any collusion on the part of the trustee and the plaintiffs affecting the interest of the bondholders under the second mortgage, they had their remedy against the colluding trustee, or by application to this court in proper time and form to set aside the decree. The master was right, therefore, in refusing to hear all the offers of evidence made by the exceptant, except the 5th and 13th. Those two taken together presented a question in the distribution itself. In connection with so much of the 9th offer as alleges that the Pennsylvania Railroad Company is the real owner of the bonds presented by William T. Howard, Esq., for payment under the first mortgage, the 5th and 13th offers allege in substance that George M. Chapman is the owner of $30,000 of the first-mortgage bonds now presented for payment by the Pennsylvania Railroad Company, and was fraudulently induced by that company to exchange them for $30,000 of the second-mortgage bonds. He claims, therefore, as the true owner of these $30,000 of first-mortgage bonds to receive the money to which they are entitled in the distribution. The question thus presented is simply one of ownership, and it was competent for the master to hear and determine it, as we held in Souder's Appeal, 7 P. F. Smith 498. In other respects we perceive no error in the master's report. We, therefore, sustain so much of the first exception of G. M. Chapman to the report as embraces the question of the ownership of the $30,000 of first-mortgage bonds above stated, and remand the report to the same master for a hearing and decision of this question.