Assigned Estate of Joseph S. Wright and Jacob A.
Schmid, trading as Wright and Schmid. Appeal of
Frederick Vietor et al.

[Marked to be reported.]

*Assignment for creditors—Compensation of assignee's attorney—Conflict-
ing interests.*

Where an assignee for creditors who is also a preferred judgment cred-
itor of the assignor employs an attorney who is also the attorney of other
creditors preferred similarly to the assignee, he will not be permitted to
pay such attorney out of the assets of the assigned estate.

*Assignment for creditors—Delivery of deed.*

A deed of assignment for the benefit of creditors takes effect when it is .delivered to the assignor's attorney to be taken by him to the recorder's office for record.

*Assignment for creditors—Right of general creditors to attack judgments.*

At the audit of the account of an assignee for creditors, the general creditors of the assignor have a standing to attack the validity of a judgment presented as a claim upon the fund which has already been paid, or was confessed for more than was due, in order to cheat and defraud them. The question can be mooted before the auditor, and if necessary, or either party requires it, an issue may be awarded to determine it. In such a case the elements of the fraud must be shown, or appear in the application for the issue, since a mere general allegation of fraud is not sufficient.

*Assignment for creditors—Distribution by assignee.*

If, without the direction of court, an assignee for creditors follows his personal interest and pays money that, prima facie, belongs to the assigned estate, to one who under the assignment has no right to it, the presumptions are against the assignee, and he must overcome them by satisfactory evidence establishing the legal right of the person to whom he has made the payment.

Argued March 25, 1897.    Appeal, No. 24, Jan. T., 1897, by Frederick Vietor et al., from order of C. P. No. 1, Phila. Co., June T., 1891, No. 863, dismissing exceptions to auditor's report. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to report of auditor, Frank L. Lyle, Esq.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*George P. Rich* and *John Sparhawk, Jr.*, with them *W. A. Manderson*, for appellants.—The auditor erred as matter of law in holding, in the absence of any evidence to the contrary, that the deed of assignment instead of taking effect on the day on which it showed on its face it was signed, acknowledged and executed, took effect only from the date of recording : Johnson v. Herring, 46 Pa. 415 ; Blight v. Schenck, 10 Pa. 285 ; Trickett on the Law of Assignments in Pennsylvania, 32.

The debtors of Wright & Schmid having, in ignorance of the previous assignment to the judgment creditors, paid the accounts

which they owed that firm to Mr. Schmid as assignee for the general creditors, and Mr. Schmid having received these payments also in ignorance of that assignment, he held these moneys absolutely in trust for the general creditors; and there was no privity of contract between him and the judgment creditors which would have enabled the judgment creditors to maintain an action against him for money had and received to their use: Finney v. Finney, 16 Pa. 380; Brown v. Title & Trust Co., 174 Pa. 447; 1 Addison on Contracts (8th ed.), *71; Clarke v. Shee, 1 Cowper, 197; 2 Greenleaf on Evidence (13th ed.), secs. 102, 120; Hindmarch v. Hoffman, 127 Pa. 284; Sadler v. Evans, 4 Burr. 1984; Stephens v. Babcock, 3 B. & Ald. 354; Miller v. Hulme, 126 Pa. 277.; Ferguson v. Yard, 164 Pa. 586; Krumbhaar v. Yewdall, 153 Pa. 476.

In the distribution of a fund arising from the sale of real estate, before an auditor, among the creditors of an insolvent debtor, judgments confessed by him without consideration, in fraud of his creditors, may be attacked and impeached before the auditor: Miners' Trust Co. Bank v. Roseberry, 81 Pa. 309; Bank's App., 85 Pa. 528; Meckley's App, 102 Pa. 536; Biddle v. Tomlinson, 115 Pa. 299; Moore v. Dunn, 147 Pa. 359.

The auditor should have disallowed the credit claimed by the assignee for $500 paid Mr. Carr for his services as his professional adviser.

*Alex. Simpson, Jr.*, for appellee.—An assignee for the benefit of creditors is a mere volunteer, standing only in the shoes of the assignors, and can invoke no remedies, and enforce no rights, which the assignor himself could not have invoked or enforced, had he not made the assignment: Fulton's Est., 51 Pa. 204; Vandyke v. Christ, 7 W. & S. 373; Bullitt & Fairthorne v. Church, 26 Pa. 110; Spackman v. Ott, 65 Pa. 131; Wright v. Wigton, 84 Pa. 166.

Fraud is not lightly to be inferred, nor to be accepted because of suspicious circumstances, but must be clearly proved: Mead v. Conroe, 113 Pa. 220; Barber v. Benner, 5 Dist. Rep. 63; Walker v. Bank, 98 Pa. 574; Reehling v. Byers, 94 Pa. 316; Thompson's App., 57 Pa. 175; Meckley's App., 102 Pa. 536.

The evidence to surcharge a trustee must clearly show a loss to the estate in his care; that he has acted in bad faith, or with

gross negligence. All the presumptions of law are in his favor: Ritter's Est., 11 Phila. 12; McCourt's App., 11 W. N. C. 161.

The creditors coming upon the fund which is or should be in the assignee's hands, can only do so by claiming through the assignee: McBride's App., 72 Pa. 480; Braman's App., 89 Pa. 78.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1897:

It is matter for congratulation that the assignments of error do not make it necessary for us to consider the facts in this case at any length. Their flavor is not pleasant. Still a brief outline of them seems necessary to a proper understanding of the legal questions presented on the record. Wright and Schmid were merchants in the city of Philadelphia. In June, 1891, and for some time prior thereto, they were hopelessly bankrupt. Their assets consisted of some $12,000 in bank, some ten or twelve thousand dollars worth of stock, and bills receivable for a somewhat larger sum. The liabilities were not far from $50,000. On the 4th day of June, 1891, the firm called its legal adviser to its assistance for the purpose of closing up its affairs. The first thing done was to confess judgment in favor of several relatives and favorite creditors, for about $10,000. Then the money on hand was disposed of. In the next place, after writs of fi. fa. had issued on the judgments and the sheriff had seized the stock of goods, a general assignment was made in favor of creditors which could be operative only on the bills receivable. This was made to a brother of one of the partners who had been the bookkeeper of the firm, and was one of the judgment creditors who had a levy on the goods. This assignment was executed on the 4th day of June and left with the attorney for the purpose of having it recorded, which was actually done on the next day. It is now alleged that on the same day a secret assignment of the most available of the bills receivable was made by the firm to the judgment creditors as collateral security, and that inasmuch as the judgments were not fully paid out of the stock, they should now be paid out of the funds in the hands of the assignee, because of this secret assignment. Mr. Carr, the attorney who prepared all these papers, says as a witness "I placed it, (the assignment as collateral) among the papers of Wright and Schmid, and I have it yet."

It seems never to have been delivered to the judgment creditors or to any one for them, but to have remained under the control of Wright and Schmid from the beginning to the end of these proceedings. The judgment creditors did not know of its execution. The assignee did not. No one seems to have had any knowledge of its execution but Wright and Schmid and their legal adviser, and the reason the latter gives for this is, in his own words, "I have never been accustomed to make a display of my clients' papers, and I did not in this case." He evidently regarded the paper as belonging to Wright and Schmid.

It appears that it was the confident expectation that all the judgments would be paid out of the proceeds of the sheriff's sale, and this was not even doubted for some time after these papers were executed. The secret assignment might therefore have been intended by the assignors as a provision against a contingency not then looked for, and not to be delivered until the necessity became apparent for withdrawing money from the assignee for the payment of the judgments. Upon these facts several questions are raised which may be very briefly disposed of.

First, should the assignee be entitled to withhold the money paid by him for counsel fees? Mr. Carr appears to have been the attorney for the plaintiffs and the defendants in all the judgments. He was the attorney of the assignors. The assignee alleges that he also employed him as his adviser. The antagonism between the judgment and the unsecured creditors was apparent. It was impossible for a man to serve both sides with equal fidelity. As a consequence all doubts were resolved in favor of the judgment creditors, and the unsecured creditors were without a friend in the assignee, because they were without counsel in a position to look after their interests. The assignee was one of the judgment creditors. His own personal interests were adverse to that of the creditors whom as assignee he was bound to protect, and if he employed the attorney of the other judgment creditors as his own, it must have been because his interest was with them. In such a case it may be proper enough for him to pay counsel for services rendered to him, but not with the money of the creditors. The first question should be answered in the negative, and all the credits for money paid to counsel for the other side of this controversy should be struck

out from his account. It seems impossible that a fair minded assignee could have believed it right for him to employ as an attorney for the assigned estate one whom he knew to be already employed to represent hostile interests. Whether he did or not, the creditors have an unquestionable right to object, and in this case their objection is sustained.

The assignee has charged for five quarters' rent paid during the settlement of this small estate, and about one hundred dollars for "stationery, stamps," etc., in several items scattered through the account. These items seem unreasonably large, and when this case is again examined should be considered. If they are vouched and seem reasonable under the circumstances, they should be allowed, otherwise they should be reduced.

When did the general assignment take effect? Beyond any doubt it took effect when it was delivered to Mr. Carr for recording on the fourth day of June. The assignors then parted with the possession and control of it, and it started on its way to the recorder and the records. It was the act of the assignors in its delivery—not that of the agent or attorney, that gave it legal effect. As against the assignors and all persons claiming through them, the assignment took effect when they delivered it to one to take to the recorder's office.

Another question presented is whether the general creditors have a right to attack a judgment before the auditor as having been already paid, or as confessed for more than was due, in order to cheat and defraud them. If the allegation is true the money should go to the assignee for the benefit of the general creditors. If not true then the judgment is entitled to take it. This question can be mooted before the auditor, and if necessary, or either party requires it, an issue may be awarded to ascertain whether anything, and if so, how much, is due upon the judgment so attacked: Bichel v. Rank, 5 W. 140. An irregularity in the entry of the judgment a defendant may waive, but he cannot waive his own fraud in confessing it to defraud his creditors. Any creditor against whom the fraud was intended to operate may raise the question: Dougherty's Estate, 9 W. & S. 196; Gates v. Johnston, 3 Pa. 52. The elements of the fraud must be shown, or appear in the application for the issue, 36 Pa. 84, since, a mere general allegation of fraud

is not enough.    Nor will a creditor who cannot reach the fund be allowed to enter upon a contest over the bona fides of the claim presented, because whatever might be the result of his contest he is neither better nor worse in position because of it: Kelly v. Herb, 157 Pa. 41.   Here is a fund which must go to one of two classes of claimants.   If the judgment creditors or any of them have not an honest demand on that fund for the sum apparently due upon his judgment, so much of the fund must go to the unsecured creditors through the assignee.   The only other question is that of the right of the assignee to pay, without the direction of the court, money collected by him, to one not entitled under the assignment to receive it.   He can arbitrarily and upon his own authority make such payment, but he makes it at his own risk, and assumes the burden of showing satisfactorily every pertinent fact necessary to establish the title of him to whom he makes the payment.   He ought not to make such payment.   It is in hostility to the trust he holds, and which he is bound to protect with reasonable fidelity.   It was in this case a preference of his own interest as a judgment creditor, over the interests of the unsecured creditors ; his individual interest over his official obligations.

One who finds himself between such conflicting motives ought in justice to himself to invoke the aid of the proper court in deciding to which he shall yield himself.   If, without the direction of the court, he follows his personal interest and pays money that belongs, prima facie, to the assigned estate to one who under the assignment has no right to it, the presumptions are against him, and he must overcome them by satisfactory evidence establishing his own fairness, and the legal right of the person to whom he has made the payment.   This he has not yet done.   If not fully done upon a rehearing it will be the duty of the auditor to surcharge him with all the money so paid.   It is a significant circumstance that this controversy is between the assignee and those whose interests he should have protected ; and that it is over money apparently belonging to the creditors which he has paid to Mr. Carr for the benefit of himself and other judgment creditors.

It shows how unfortunate it was in this case, and must be in all cases where one is selected as assignee whose position is necessarily hostile to those interested in the fund, and where

such an assignee employs as his official adviser an attorney whose previous engagements prevent the possibility of his representing the unsecured creditors in the only controversy to be anticipated in which their interests are involved, and in which they will need professional aid.

The decree is reversed and the record is remitted for further proceedings in accordance with this opinion.