# Hauer's Appeal.

5ws473
187 313

5ws   473
37SC  171

A judgment entered in the District Court, by virtue of a warrant of attorney authorizing the entry of a judgment in the Court of Common Pleas, cannot be set aside as erroneous, at the instance of a subsequent judgment creditor.

THIS was an appeal by Jacob Hauer from the decree of the District Court of the city and county of *Lancaster*.

Leonard Neigley, Jun., executed a bond to Jacob Hauer, with a warrant of attorney to confess judgment, dated the 25th January 1842, in the penal sum of $3070, conditioned for the payment of $1535 in ten days with interest. By the warrant of attorney, he authorized and empowered John Montgomery, or any attorney of the Court of Common Pleas of Lancaster county " to appear and confess judgment for the said sum, in said court as of any time or term, hereby releasing all errors," &c. On this warrant the prothonotary entered judgment in the District Court for the city and county of Lancaster, on the 28th February 1842. On this judgment an execution was issued on the same day, and put into the hands of the sheriff. On the 1st March 1842, Samuel Balmer, Jun., issued an execution out of the same court on his judgment against the same defendant; and on the 4th March 1842, Fitzgerald, Frey & Co., issued an execution out of the same court on their judgment against the same defendant, which were also on the said days put into the hands of the sheriff; who subsequently sold the defendant's personal property, and brought the money, $1291.78 into court for distribution. On the motion of the counsel of Samuel Balmer, Jun., and Fitzgerald, Frey & Co., the court granted a rule upon Jacob Hauer, to show cause why his judgment should not be vacated, and the execution issued thereon be set aside: and at a subsequent term, the court made the rule absolute, and decreed that the money made by the sheriff should be paid over, first to discharge the execution of Balmer, and the balance to the execution of Fitzgerald, Frey & Co. From this decree Hauer appealed.

*Stevens*, for appellant. Clearly the court had jurisdiction of the subject, and, therefore, the entry of the judgment was not void; and if only defective, it is merely irregular, and there can be no principle better settled, than that such irregularity can only be taken advantage of by a party to the judgment. 1 *Penn. Rep.* 251; 20 *Wend.* 609; 2 *Wash. C. C.* 433; 3 *Johns.* 142; 20 *Johns.* 296; 2 *Watts & Serg.* 449; 8 *Watts* 78; 1 *Watts* 385. But the District Court is a Court of Common Pleas. 1 *Watts & Serg.* 89: 4 *Rawle* 401.

v. — 60                    2 p *

*Franklin*, contra, argued that the District Court had no jurisdiction, and therefore, the judgment was void : the defendant had not appeared, nor authorized any one to appear for him in that court. 8 *Term Rep.* 153; 10 *Wend.* 541 ; 1 *Wend.* 311; 3 *Penn. Rep.* 72 ; 1 *Penn. Rep.* 244; and the want of jurisdiction may be taken advantage of by third persons whose rights are affected. 10 *Watts* 51 ; 3 *Watts* 413 ; 14 *Serg. & Rawle* 170.

The opinion of the Court was delivered by

GIBSON, C. J.—The principle at present involved, was so fully discussed in *Ulrich* v. *Voneida*, (1 *Penn. Rep.* 250), and in *Campbell* v. *Kent*, (3 *Penn. Rep.* 72), that little more remains than to say, that the decision in the first of those cases, was an unexpected departure from a beaten track, for which it would be difficult to. account. Take it, as there assumed by the majority, that a terre-tenant is so far a stranger to a judgment against his vendor as to be incompetent to reverse it directly for error, yet it follows not, that he may abate it indirectly, by reason that he has no other remedy. Remedy for what? When a stranger to a judgment buys land by which it is bound, he knows what he is about; and I am unable to understand, how an error in the concoction of the lien which does not touch the words between the original parties, can do him a wrong to entitle him to a remedy in any shape. He contracts to pay a price proportionate to the value of the land, subject to the encumbrance ; or if not, then the price of a clear title, warranted by the vendor's covenant : and in either case, it rests with the vendor to vacate the judgment, not with him. By avoiding an encumbrance, subject to which he had purchased, he would increase the value of what he got without paying an increased price for it ; or give to younger lien creditors, a priority at the expense of an older one, which was not originally designed, and which none but the debtor had a right to control. If any one is injured by the defects of such a judgment, it is the debtor ; and he is the party to correct them. A creditor may, indeed, be injured by a *collusive* judgment for a *fictitious* debt which would sweep away his source of payment, and may consequently avoid it collaterally for the fraud ; and a terre-tenant also may avoid such a judgment in the same way, where it would be a fraud upon his title—as was shown by authority in *Campbell* v. *Kent*. The question in a contest with strangers, is not whether the judgment is erroneous, but whether it is fraudulent; and Lord HOLT doubtless meant no more in *Proctor* v. *Johnson*, (2 *Salk.* 600), when he said, in reference to a defence by terre-tenants to a *scire facias* on a judgment in ejectment, " that strangers may *falsify*, but those that claim under the judgment, are estopped and bound by the judgment"—a *dictum* which seems to have been misapplied in *Ulrich* v. *Voneida*. A creditor, as I have said, may abate a fraudulent judgment for a pretended debt; but he cannot abate an erro-

neous one for a *bonâ fide* debt to gain priority by it, for he was entitled to no priority at the date of the judgment, and its erroneousness was no wrong to him. Priority is in the gift of the debtor, and where it is obtained from him by means of an erroneous security with which both parties are content, no one has room to complain of it. Where there is no-interest of a third person to be defrauded at the entry of a judgment, want of authority to confess it, concerning as it does only the parties to it, may be supplied by subsequent ratification, which is equivalent to a precedent authority, or by acquiescence, which is equivalent to ratification; but want of an actual debt as a foundation for it, is an incurable vice. And where an interest is subsequently acquired by a third person with his eyes open, he is not defrauded by what has been done before his time. The conclusion of the whole matter is, that as a creditor has not a vested right to come in even *pari passu* without his debtor's consent, he cannot object to the means by which a preference is given to another; and that a terre-tenant, being a purchaser from the debtor subsequently to the judgment, must not be allowed to disturb it where it does not wrongfully affect his title. The principle is an elementary one which has never been disputed. Even in the contested cases to which I have referred, the ground assumed by the majority was, not that the judgment was erroneous, but that, for want of authority, it was absolutely void—an assumption, which the preceding considerations are equally proper to repel. But the principle rests not on argument alone; for it was broadly asserted in *Lewis* v. *Smith*, (2 *Serg. & Rawle* 142), as well as in *Martin* v. *Rex*, (6 *Serg. & Rawle* 296), and thus the decisions in our own court in regard to it, stand poised. But decisions are to be tried, not *numero,* but *pondere ;* and the point was ruled in *Ulrich* v. *Voneida*, as well as in *Campbell* v. *Kent*, by a casting vote. But nothing is better fortified by authority, both British and American, than that an actual judgment of a court of competent jurisdiction, is never to be treated as a nullity in the first instance. There is an almost endless train of decisions for it, a few of which, but enough to set the point at rest, were adduced in the contested cases; and there are many *dicta* to the same effect in our own books. Even Mr Justice Huston, who delivered the opinion of the majority in *Campbell* v. *Kent*, has since recognised it in *Humphreys* v. *Rawn ;* and his opinion is now to be numbered with the authorities on the other side. In the case before us, therefore, Hauer's judgment against Neigley, though entered in the District Court on a warrant to enter it in the Common Pleas, must be paid in its order as an existing lien.

　　　　　　　　　　　　　Decreed accordingly.