# Verner *versus* Carson *et al.*

1. Verner sold to Rhodes, to pay in annual instalments of $5000 each in eight years with interest at 8 per cent., payable quarterly, for which notes were to be given, Verner to retain the title as security, Rhodes to give a judgment-bond as further security; if he failed to pay any of the notes either for principal or interest when due, "then the whole sum both principal and interest then unpaid whether in fact due or not," should become due and judgment be entered "for the whole sum." One interest note was unpaid when due, there being unpaid but not due one instalment and two interest notes. Verner entered judgment for the whole amount. *Held*, that the judgment was conclusive until reversed.

2. Rhodes could not impeach the judgment collaterally except for fraud.

3. Rhodes before the judgment sold to Carson with covenant to protect him against Verner's claim; this was notice to Carson, and in ejectment by Verner to recover the purchase-money, Carson could not go behind the judgment.

4. Independently of the estoppel by the judgment, Carson had no equity against the judgment, it being immaterial whether he paid his purchase-money to Rhodes or in satisfaction of the judgment.

5. Whether any one but the borrower or debtor can set up the defence of usury under the Act of May 28th 1858, not decided.

November 8th 1870.  Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county*: No. 156, to October and November Term 1870.

This was an action of ejectment, commenced January 18th 1869, by James D. Verner against Joseph M. Carson and Thomas Miller, for an undivided half part of a lot of ground in Pittsburg.

The plaintiff and Joshua Rhodes, who were partners as brewers, on the 1st of December 1860, entered into an agreement in writing, by which they dissolved the partnership, the plaintiff assigned and delivered to Rhodes all the stock, notes, &c., and all the effects of the firm whatsoever; "the title to the brewery property, purchased of Thomas Scott, shall remain in the parties as it now is, as security for the amount to be paid to said James D. Verner by the said Joshua Rhodes for his interest in the firm; and the said James D. Verner does for himself, his heirs, executors, administrators and assigns, covenant, promise and agree to and with the said Joshua Rhodes, his heirs, executors, administrators and assigns, that whenever the said sum shall be paid to him, or secured in an ample and satisfactory manner, he shall and will thereupon, by good and sufficient deed, transfer, sell, assign and convey all his right, titles, interest and claim of, in and to said property to the said Joshua Rhodes."

"In consideration of the foregoing premises, the said Joshua Rhodes agrees to pay the said James D. Verner $41,000 in the manner following, viz.: $1000 in cash, and the residue in eight notes of $5000 each, so drawn that the first note shall fall due

[Verner v. Carson.]

on the first day of July 1862, and the other seven regularly on the first days of July in every year thereafter until the whole are paid ; all bearing interest at the rate of eight per centum per annum, from the first day of January next, which interest, however, shall be made payable· regularly every three months, from the first day of January next, the first note falling due on the first day of April next: *provided, however*, that the note for $5000, to fall due on the first day of July 1862, shall be paid at any time before maturity, whenever the said James D. Verner may require the money. The said notes shall be further secured by the judgment-bond of the said Joshua Rhodes, and in the event of his neglect, failure or refusal to pay any one of the notes, either for principal or interest, at maturity, then the whole sum, both of principal and interest then unpaid, whether in fact due or not, shall immediately thereupon become due and payable, and the said James D. Verner, his endorsees, executors, administrators and assigns, shall be at liberty instantly to file up the said judgment-bond and issue execution thereon for the whole sum. The said judgment-bond, however, is not to be filed or used until this default occurs, without the knowledge, consent and approbation of the said Joshua Rhodes."

The bond from Rhodes to the plaintiff, given in pursuance of the agreement, bore even date with it, and was in the penalty of $110,000, with warrant of attorney to confess judgment for the penalty with costs, " and attorney's commissions for collection, viz. : 5 per cent. in case payment has to be enforced by pι ιcess of law." Rhodes gave notes for the payment of the consideration with interest according to the agreement, amongst the rest three notes of $100 each for the quarterly payments becoming due ·respectively on the first days of January, April and July 1869, and one for $5000, part of the principal, becoming due July 1st 1869.

On the 1st of September 1866, Rhodes conveyed the whole premises to Carson, one of the defendants, and at the same time Rhodes stipulated as follows :—" that I, the said Joshua Rhodes, hereby covenant and agree with the said J. M. Carson, that I will procure at my own expense a quit-claim deed, or release from the said James D. Verner, before the final payments made by the said Carson on account of his purchase of the said property."

It did not appear whether Carson had paid to Rhodes any part of the purchase-money.

All the notes falling due before January 1st 1869, were paid according to their face, but default having been made in the payment of the interest due on that day, the plaintiff entered judgment on his bond on the 6th of January, and liquidated it at $5565, being the amount of the remaining instalment, $5000, of the three unpaid interest notes of $100 each, and of the commissions for

[Verner v. Carson.]

collection. This action of ejectment was to enforce payment of the balance of the purchase-money to the plaintiff as ascertained by the judgment against Rhodes.

The court (Sterrett P. J.) charged:— * * *

"If you believe the plaintiff's testimony, he is entitled to your verdict for the undivided half of the premises described in the writ, to be released on payment (within such time as you may think reasonable) of the four last notes, viz.: three notes of $100, payable, respectively, January 1st, April 1st and July 1st 1869, and note $5000, payable July 1st 1869, with interest and attorney's commissions, 5 per cent., and we will reserve the following questions of law and receive your verdict, subject to the opinion of the court in banc thereon, viz.:—

"1. Whether the plaintiff is entitled to recover the three interest notes of $100 each, and attorney's commissions, or any part thereof?

"2. Whether the defendant is not entitled to set off the excess over the legal rate of interest paid by Rhodes, included in his interest notes from April 1st 1861, to October 1st 1868, both inclusive?" * * *

The jury rendered this verdict:—

"We find for the plaintiff the undivided half of the premises described in the writ, with six cents' damages and costs, to be released on the payment of $5802.50 (or such less sum as judgment may be entered for by the court on the questions of law reserved), within nine months, with interest from this date, and on execution and delivery of deed by the plaintiff, subject to the opinion of the court on the questions of law reserved."

They accompanied their verdict with a statement of the amounts and dates of the payment of interest.

In delivering the opinion of the court on the questions reserved, Sterrett, J., said:—

* * * "The first question is, whether the plaintiff is entitled to recover the amount of the last three interest notes of $100 each, maturing respectively January 1st, April 1st and July 1st 1869, —and attorney's commissions—or any part thereof.

"The plaintiff availed himself of the provisions in the agreement by which, in default of payment of either of the notes, all the subsequent notes became due and payable. Default was made in payment of the interest note which matured January 1st 1869, and he claims the right to collect not only this note, but the other two interest notes as well. These last notes were given expressly for the last six months' interest on the instalment due July 1st 1869; in other words, for six months' forbearance as to the last instalment. The plaintiff chose not to forbear, and proceeded to collect the instalment as due by the terms of the agreement. Under the circumstances, we are of opinion that it would be unjust

[Verner v. Carson.]

and inequitable, to permit him to collect interest that was never earned. If the defendant were compelled to pay it, it would operate solely as a penalty for his default.

"As to the note due January 1st 1869, we are of the opinion that the plaintiff has a right to collect so much of the same as will cover three months' interest on the last instalment, or so much of the instalment as appears to have been unpaid at the maturity of the note, to be ascertained by calculation on the basis hereinafter referred to in disposing of the second reserved question.

"We are of opinion that the plaintiff is entitled to the five per cent. attorney's commissions on the amount found by our ruling to be due at the date of the verdict.

"The second reserved question is, whether the defendant is entitled to set off the amount of interest in excess of six per cent., embraced in the interest notes?

"We think he is; the two per cent. excess, included in each interest note paid, was usurious, and we are of opinion that defendant is entitled to credit for such excess as payments on account of the principal debt, as of the dates the notes were respectively paid." * * *

He accordingly directed judgment on the reserved questions for the plaintiff, to be released on the payment of $1245.47.

The plaintiff took out a writ of error, and assigned for error the judgment as entered on the reserved questions.

*D. Bruce*, for plaintiff in error.—As to the two $100 notes he cited Robinson v. Loomis, 1 P. F. Smith 78. As to the usurious interest he referred to and compared the Acts of March 2d 1723, 1 Smith L. 156; May 28th 1858, Pamph. L. 622, Purd. 561, pl. 1, 2.

*M. W. Acheson*, for defendants in error.—The contract under the agreement between Verner and Rhodes is usurious: Evans v. Negley, 13 S. & R. 218; Eshelman v. Witmer, 2 Watts 264. Treating the sums paid in excess of legal interest as payments on the principal debt, was correct: Kupfert v. The Guttenberg Building Association, 6 Casey 465; Hughes's Appeal, Id. 471; Philanthropic Building Association v. McKnight, 11 Id. 470; Reiser v. The William Tell S. F. Assoc., 3 Wright 137. The defendants were entitled to set up the defence of usury: Lloyd v. Scott, 4 Peters 205; Greene v. Tyler, 3 Wright 361.

The opinion of the court was delivered, May 8th 1871, by

WILLIAMS, J.—This was an ejectment to enforce the payment of the purchase-money charged upon the premises described in the writ. By articles of agreement dated December 1st 1860, the plaintiff sold his interest in the firm of Rhodes & Verner, includ-

[*Verner v. Carson.*]

ing the property in question, to his copartner, Joshua Rhodes, for the sum of $41,000, payable as follows: $1000 in hand and the residue in instalments of $5000 each, on the 1st day of July in each year from 1862 to 1869 inclusive, with interest thereon from the 1st of January 1861, at the rate of 8 per cent. per annum, payable every three months. In accordance with the provisions of the contract, Rhodes gave the plaintiff his promissory notes for the principal and interest, payable as the same became due, and his bond with power of attorney to confess judgment against him, in case of his failure to pay any one of the notes for principal or interest at maturity, for the whole amount of the notes then unpaid, whether due or not, and to issue execution therefor, with costs and attorney's commissions.

On the 1st of September 1866 he sold the premises in controversy to the defendant, Carson, and entered into an agreement with him, in which, after reciting that "whereas James D. Verner has a claim or lien against said property for the sum of $15,000," he covenanted to procure, at his own expense, a quitclaim, deed or release from the said Verner before the final payments were made by the said Carson on account of the purchase of the said property. But there was no evidence showing at what price he sold the property, nor whether Carson had paid him any part of it.

Rhodes paid all the notes for principal and interest maturing prior to the 1st of January 1869. But he failed to pay the interest note for $100, which fell due at that date, and on the 6th of January the plaintiff caused judgment to be entered on the bond against him for $5565, being the amount of the notes then unpaid with attorney's commissions thereon. On the 18th of January 1869 he brought this ejectment against Carson and Miller, to enforce payment of the amount of the purchase-money for which he had obtained judgment against Rhodes. On the trial of the case the defendants contended that if the plaintiff was entitled to a conditional verdict, to be released on payment of the unpaid purchase-money, he was not entitled to include in his claim the two interest notes made payable on the 1st of April and 1st of July 1869, and attorney's commissions; and that they had the right to set off the excess over the legal rate of interest included in the interest notes previously paid by Rhodes. Under the instructions of the court, the jury found for the plaintiff the undivided half of the premises described in the writ, with six cents damages, &c., to be released on payment of $5802.50 (or such less sum as judgment may be entered for by the court on the questions of law reserved) within nine months, with interest from date, subject to the opinion of the court on the following questions of law reserved:—

1. Whether the plaintiff is entitled to recover the three interest

[Verner v. Carson.]

notes of $100 each, due respectively January 1st 1869, April 1st 1869, and July 1st 1869, and attorney's commissions of 5 per cent., amounting to $200, or any part thereof; and if so, how much?

2. Whether the defendants are entitled to set off the amount of interest paid by Joshua Rhodes in excess of six per cent., amounting, without interest, to $3325, and with interest on each payment computed to the date of the verdict, to $4416.53; and if they are entitled to set off said payments in excess of legal interest, whether with or without interest thereon.

On the hearing of the reserved questions the court decided that the plaintiff was not entitled to recover the two interest notes payable on the 1st of April and the 1st of July 1864, for $100 each; that the defendants were entitled to set off the excess over the legal rate of interest paid by Rhodes; and that the plaintiff was entitled to 5 per cent. attorney's commissions on the amount due at the date of the verdict. The court accordingly directed judgment to be entered on the verdict in favor of the plaintiff, to be released on payment of $1245.47, with interest and costs, within the time specified in the verdict, &c.

The plaintiff excepted to the opinion of the court, and has assigned for error its rulings on the reserved questions.

The main question presented by the assignment is, whether the defendants are entitled to set off the amount of interest in excess of 6 per cent. included in the interest notes paid by Rhodes?

The paper-books do not furnish us with the evidence given on the trial, but it appears from the plaintiff's history of the case and from the charge of the court, that in default of payment of the interest note due January 1st 1869 judgment was entered in favor of the plaintiff against Rhodes, on the 6th of January 1869, for the amount of the notes then remaining unpaid, and the sum due was liquidated at $5565. This judgment was binding and conclusive on the parties until reversed or set aside. It could not be collaterally impeached or avoided by Rhodes except on the ground of fraud. If it was conclusive upon him, it was equally conclusive upon the defendants in this action. They could not go behind it and inquire into its consideration, or question its validity. It is not pretended that it was fraudulently or collusively confessed by Rhodes to their prejudice. It could not have been, for Carson bought the property with notice of the plaintiff's lien and with Rhodes's covenant to procure its release; and so far as appears, he has never paid any part of the purchase-money. Having the right to withhold its payment, the presumption is that his indebtedness to Rhodes exceeds the amount of the plaintiff's judgment. But whether this be so or not, the judgment was conclusive of the amount due the plaintiff, and estopped the defendants from claiming a deduction of the two interest notes, or the excess of interest included in the notes previously paid by Rhodes:

[*Verner v.* Carson.]

Hauer's Appeal, 5 W. & S. 473; Drexel's Appeal, 6 Barr 272; Dickerson's Appeal, 7 Barr 257; Watson *v.* Willard, 9 Id. 89; Lewis *v.* Rogers, 4 Harris 21; Buehler *v.* Buffington, 7 Wright 278. But if the defendants were not estopped by the judgment, they have no such equity as entitles them to go behind it in order to contest the amount of the plaintiff's claim. It was not confessed to their prejudice, and it can do them no possible harm. So far as it respects their rights, it is immaterial whether the purchase-money in the hands of Carson is paid directly to Rhodes or applied to the satisfaction of the plaintiff's judgment. If Rhodes does not object to the judgment, it is clear that the defendants have no right in law or equity to make any defence to it whatever.

This view of the case renders it unnecessary to determine whether, under the provisions of the Act of 1858, any other than the borrower or debtor can set up the defence of usury, and at his option retain and deduct the excess of interest over the legal rate contracted for or paid by the borrower or debtor, from the amount of the debt sought to be recovered.

And now, May 8th 1871, it is ordered and adjudged that the judgment of the Court of Common Pleas in this case be and the same is hereby reversed; and it is further ordered, adjudged and decreed that judgment be now entered on the verdict in favor of the plaintiff, for the undivided half of the premises described in the writ, with six cents damages, &c., to be released on payment of $5802.50, with interest from the 3d day of December 1869, within three months from this date, and upon execution and delivery by the plaintiff of a good and sufficient deed for all his right, title and interest in the said premises.