## Appeal of Second National Bank of Titusville.

1. In the distribution of a fund an auditor cannot inquire into the validity of a judgment regular on its face, but he may receive testimony to show that it has been paid or otherwise satisfied.

2. Where a judgment has been fraudulently given by collusion between debtor and plaintiff in such judgment, for the purpose of defrauding creditors, it may be attacked collaterally by the creditors intended to be defrauded.

3. The mere fact that the debtor has paid more than six per cent. is not enough to establish fraud upon creditors, and his refusal to contest the claim against him does not of itself amount to fraud.

4. Neither under the Act of Congress in regard to usurious interest taken by national banks, nor under the Act of 1858 of this state, is the taking of more than six per cent. interest a fraud *per se* upon creditors: Greene *v.* Tyler, 3 Wright 361, and Bachdell's Appeal, 6 P. F. Smith 386, considered.

5. City taxes are a claim upon the fund arising from a sheriff's sale and are to be first paid.

November 19th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the decree of the Court of Common Pleas of *Crawford county :* Of October and November Term 1876, No. 166.

In November 1871, Z. Waid was the owner of three improved lots in Titusville; and while thus the owner, three judgments were obtained against him, and continued liens on the lots at the time of their sale. These were in the following order and amounts: Chase, for $200, November 6th 1871; appellants, $2515.40, May 20th 1873; Roberts & Co., $178.90; Henderson, $1769,12, November 6th 1873; Producers' and Manufacturers' Bank, $555.23, March 9th 1874. The judgments of Chase and Henderson were

[Appeal of Second National Bank of Titusville.]

assigned to the appellants. The lots were sold on an execution issued upon the judgment of Henderson. Lot No. 1 was sold for $2005; No. 2 for $1365; No. 3 for $830, and No. 4 for $215, making a total of $4115. The appellants became the purchasers of lots No. 1, 2 and 4, for $3585, and gave the plaintiff a lien-creditor's receipt, as follows: on the Chase judgment, $268.03; appellants', $2156.12; Henderson's, $1879.73. Appellants also received $748.80, the proceeds of the sale of No. 3. The Producers' & Manufacturers' Bank, the holders of judgment No. 5, claimed that the appellants' judgment and that of Henderson should be reduced, on account of usury; and the auditor found that the firm of Shugert & Starr gave to the appellants a note for $2500, endorsed by Z. Waid. This was renewed at the rate of ten per cent. per annum, and finally this judgment obtained; and Shugert & Starr, having paid usurious interest in the sum of $203.13, brought suit to recover double the amount as a penalty. This suit was settled. The auditor deducted the interest paid by Shugert & Starr before Waid became endorser, and reduced the judgment to $1262.17; that the attorney's fee of five per cent. paid Waid should be applied as a payment; that certain notes given by Waid, amounting to $690, and unpaid, were a payment of usury, and to be deducted. He also allowed a claim of the city for paving, sewer and general tax, amounting to $394.34. The court, by decree below, confirmed the report, and dismissed appellants' exceptions, from which they appealed, and assigned for error the entry of this decree.

*Roger Sherman*, for appellant.—A lien creditor cannot enforce the forfeiture occasioned by usury. It can only take place when the debtor is sued, and then as a matter of defence: Lucas *v.* Gov't. Nat. Bank, 28 P. F. Smith 228. The reclamation of usury is a personal privilege of the debtor: Miners' Trust Co. Bank *v.* Roseberry, 3 W. N. C. 13. There can be no inference of fraud from excessive interest: Good *v.* Grant, 26 P. F. Smith 52. A creditor cannot impeach a judgment except for fraud: Dougherty's Estate, 9 W. & S. 189; Thompson's Appeal, 7 P. F. Smith 175.

The claim for taxes was not a prior lien: Pittsburgh's Appeal, 20 P. F. Smith 142; Pittsburgh's Appeal, 4 Wright 455; Allegheny City's Appeal, 5 Id. 60; Gormley's Appeal, 3 Casey 49.

*Guthrie & Byles*, for appellees.—A junior judgment creditor may attack a senior creditor's judgment, where the latter contains usurious interest. A junior mortgagee is entitled to have his senior's mortgage reduced on account of usury: Greene *v.* Tyler, 3 Wright 365; Primrose *v.* Anderson, 12 Harris 215. Usury as previous transaction may be defalked against a claim: Thomas *v.* Shoemaker, 6 W. & S. 179; Lucas *v.* Gov. Nat. Bank, 28 P. F.

4 Norris—34

Smith 228. Taxes are first payable out of the funds : Larkin's Appeal, 2 Wright 457 ; Allegheny City's Appeal, 5 Wright 60 ; Pittsburgh's Appeal, 20 P. F. Smith 142 ; City v. McGonigle, 4 Phila. 351 ; Philadelphia v. Cooke, 6 Casey 56 ; Smith v. Simpson, 10 P. F. Smith 168 ; Duffy v. Philadelphia, 6 Wright 192.

Mr. Justice PAXSON delivered the opinion of the court, May 6th 1878.

This controversy has arisen in the distribution of the proceeds of a sheriff's sale of the real estate of Zephaniah Waid. At the date of the sale, the Second National Bank of Titusville held a judgment amounting to $2156.12, and William M. Henderson was plaintiff in a judgment for the use of the same bank, amounting to $1879.73. Waid became the endorser of a note of Shugert & Starr to the bank for $2500, on the 18th of December 1872. In a suit subsequently brought on it, judgment was obtained on the 20th of May 1873. Before the note was given, interest at the rate of ten per cent. had been paid by Shugert & Starr on the debt it represented, to the amount of $125.68. When it was given, on the 18th of December 1872, a discount at the rate of twelve per cent., amounting to $77.50, was retained. It was the second renewal of a note originally given on the 30th of May, and first renewed on the 6th of September 1872. It was only at the date of the second renewal that Waid became endorser. Upon the proof that usurious interest had been reserved, the auditor decided that " the interest-bearing power of the obligation had been destroyed," and " as there was no point of time in the history of such paper at which it could be freed from the taint of illegality, so it followed that there could be no point of time from which it would bear interest." Under the view of the law thus taken in the report, the costs, the attorney's commissions of five per cent., stipulated for in the note, charges for protests, and all interest accrued on the original note and its renewals, and on the judgment, were excluded from the allowance made to the bank. There were also deducted the interest, attorney's fees, and costs accrued in a judgment on a note for $1700, made up in part of an independent note for $1500, previously discounted, and in part of interest and costs of the judgment obtained on the note of Shugert & Starr. On the same ground of usury, the sum of $111.99 was deducted from the Henderson judgment. These rulings of the auditor were affirmed by the court, upon exceptions. It has been settled by a line of authority that, in the distribution of a fund, an auditor cannot inquire into the validity of a judgment regular upon its face : Dyott's Estate, 2 W. & S. 557 ; Leeds v. Bender, 6 Id. 315 ; Ellmaker v. The Insurance Co., Id. 442 ; Thompson's Appeal, 7 P. F. Smith 175. But he may receive testimony to show that since its rendition the judgment has been paid or otherwise satisfied : Borland's Appeal,

16 P. F. Smith 470; and he may disregard a judgment void upon its face: Brunner's Appeal, 11 Wright 67; but not because it is merely erroneous: Hauer's Appeal, 5 W. & S. 473; or a fraud upon the debtor: Thompson's Appeal, *supra*. All the cases say that the mere fact that the debtor has been overreached, and a fraud perpetrated upon him by the creditor, gives no right to other creditors to attack the judgment collaterally. So long as it stands as a valid judgment against the defendant, it is good against them. They have no right to complain of a fraud upon him. In such cases the only person who can impeach the judgment is the defendant himself, and this must be done by a motion in the proper court to open it. When a judgment is assailed in this way before an auditor, it is his duty, as was pointed out in Dyott's Estate, and Leeds *v.* Bender, *supra*, to suspend his decision until its validity can be decided by the court in which it was entered. It would be an anomalous proceeding for an auditor to try the validity as between the parties of a solemn judgment of the court that appointed him; yet more so of the judgment of the court of another county or another state. Where, however, a judgment has been fraudulently given by collusion between the debtor and the plaintiff in such judgment, for the purpose of hindering and delaying creditors, it may be attacked collaterally by the creditors intended to be defrauded: Dougherty's Estate, 9 W. & S. 189; Lewis *v.* Rogers, 4 Harris 18, and Thompson's Appeal, *supra*. As to them such judgment is void. But they can only have it set aside as to themselves. They cannot impair it as between the parties.

If, then, creditors may not impeach a judgment before an auditor for a fraud upon the debtor, it follows that, in order to sustain the auditor and the court below, we must go to the extent of holding that the usury complained of was a fraud upon the creditors—a collusive fraud to hinder and delay them. That there was fraud and collusion in fact is not pretended, which drives us to the yet narrower question whether an usurious contract is a fraud *per se* upon creditors. It was said in Good *v.* Grant, 26 P. F. Smith 52, that "to pay interest in excess of the legal rate is not necessarily fraudulent as to creditors;" and in Miners' Trust Company Bank *v.* Roseberry, 31 P. F. Smith 309, it was said by MERCUR, J.: "Whenever the usurious contract is intended to defraud creditors, or when the circumstances of the debtor are known to be such that it can reasonably be presumed that this will be the natural effect, the right of creditors to postpone the excess of interest must be conceded." But in each of these cases the question whether any one but the borrower could go behind the judgment was left undecided, as it had been left undecided in Verner *v.* Carson, 16 P. F. Smith 440. In Greene *v.* Tyler, 3 Wright 361, it was held competent for a second mortgagee to question, in a distribution, a prior mortgage, on the ground of usury; and in Bachdell's Appeal, 6

P. F. Smith 386, the syllabus states the point of the case to be that " an auditor reported that judgment creditors could question the validity of a prior judgment on the ground of usury, and reduced a usurious judgment accordingly. The court below, on exceptions, confirmed the report in this particular." The decision of the auditor was rested wholly on the authority of Greene *v.* Tyler. This point was not alluded to by Chief Justice THOMPSON, in delivering the opinion of the court, which consisted of nine lines devoted to reversing the decree because interest had been allowed on a judgment after the day of sale. No paper-book was furnished on behalf of the appellee, and the point was manifestly overlooked by the Chief Justice, who delivered the opinion in the subsequent case of Edwards's Appeal. Greene *v.* Tyler certainly decided that a usurious consideration could be inquired into by a subsequent mortgagee; and as before observed, Bachdell's Appeal was ruled by the auditor solely on this authority. It will be seen, by an examination of the opinion in Greene *v.* Tyler, that considerable stress was laid upon the facts that the second mortgagee had a specific lien on the very thing sold by the sheriff, and that his lien attached before the judgment was confessed upon the first mortgage, as to which the usury was charged. It also appeared that the mortgage was given for $2000 more than was actually received or loaned thereon. It is not essential, however, to question the soundness of either of these decisions. While the broad question whether usury was a fraud *per se* upon creditors appears rather to have been assumed than discussed, we may concede those cases to have been rightly decided to the extent of their own facts. At that time the taking of more than six per cent. interest was unlawful, and subjected the lender to a penalty. It is not so now. The Act of 28th May 1858, Pamph. L. 622, has made a radical change in this respect. By the first section of said act, six per cent. is declared to be the legal rate of interest where no express contract has been made for a less rate. The second section recognises the right to reserve or contract for a higher rate, but provides that in such case the creditor shall not *compel* his debtor to pay more than six per cent.; authorizes the debtor to retain and deduct the amount of the excess from such debt, and where he has voluntarily paid such excess, to recover it back by an action to be commenced within six months after such payment. It is not therefore now unlawful for a debtor to pay and a creditor to receive more than six per cent. And where it is done in good faith, and in the usual course of business, it would shock the common sense of every intelligent man for any court to say that it was a collusive fraud between the creditor and his debtor to cheat and defraud the creditors of the latter. It may be that such collusive scheme might be covered up under the guise of usury. When it exists it can be as readily detected under the cover of a usurious contract as of

any of the other devices which are resorted to for such purpose. But the mere fact that the debtor pays more than six per cent. is not enough to establish a fraud upon creditors. Nor would his refusal to contest the claim against him, of itself amount to such fraud. A man who has, in good faith, contracted to pay more than six per cent., has committed no violation of any law, and is not bound to repudiate his contract. A very large class of honorable and upright men would regard it as dishonest to do so. I do not say that there might not be a case where, in a transaction out of the ordinary course of business and under circumstances tending to show collusion, a refusal by the debtor to set up such a defence might not be evidence, with other matters, of an intent to defraud creditors. Such cases must be disposed of when they arise. The recent legislation referred to has, to some extent, recognised the actual wants of business men, and evinces a growing tendency to regard money as an article the price of which must be regulated by the law of supply and demand. It has always been so, and it always will be so. No law can enable the thriftless man to borrow money as cheaply as the prosperous man, or to get money when it is scarce at the same rate as when it is abundant.

The appellant in this case is a National Bank. Section 5197 of the Revised Statutes allows such banks to charge and receive such rate of interest as is authorized by the laws of the state where the bank is located, and sect. 5198 provides that: "Knowingly taking, receiving or charging a rate of interest greater than aforesaid, shall be held and adjudged a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon." Thus it will be seen that under the Act of Congress no interest can be recovered upon a usurious contract, while by the law of this state the legal interest can be recovered, but no more. While the former uses the word "forfeiture," and is penal to the extent of the interest, it does not make the entire contract void or even voidable. If under our Act of 1858 it is not a fraud *per se* upon creditors for a debtor to pay more than the legal rate of interest, it would be straining the law to say that it is so under the Act of Congress. The whole question of interest is regulated by our own statute. The Act of Congress applies only to the national banks, and as to them the rate of interest conforms to the state law.

Where creditors allege that usury is a fraud upon them they must do more than show the payment in the usual course of business of interest in excess of the legal rate. That is a matter of which the debtor alone can complain. In the case in hand there was nothing to show collusion to defraud creditors. It follows that they had no standing before the auditor to set aside the appellant's judgment.

Even in view of the record as it was made up by the auditor, the case did not justify the charging the costs of the distribution upon

[Prescott *v.* Otterstatter.]

the appellants. The questions were fit to be raised, and the position of the appellants entitled them to raise them.

The decree of the Common Pleas is reversed, and it is now adjudged and decreed that the fund in court be applied first to the costs of the distribution; secondly, to the city's claim for taxes, sewer and paving assessments; and, thirdly, to the judgments in their order for the amounts shown by the record to have been due upon them respectively at the date of the sheriff's sale; the costs of this appeal to be paid by the appellees.