## Commonwealth v. Hill, Appellant.

*Criminal law—Keeping disorderly house—Usury.*

1. A person cannot be convicted of keeping a disorderly house by proof that he conducted a business of lending money at usurious interest in a particular house.

2. Since the passage of the Act of May 28, 1858, P. L. 622, usury is not unlawful in Pennsylvania.

Argued March 1, 1911.   Appeal, No. 290, Oct. T., 1910, by defendant, from judgment of Q. S. Phila. Co., April T., 1910, No. 635, on verdict of guilty in case of Common-

wealth v. Arthur V. Hill.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Indictment for keeping a disorderly house.   Before BRÉGY, J.

The opinion of the Superior Court states the case.

Verdict of guilty, upon which judgment of sentence was passed.   Defendant appealed.

*Error assigned* was in dismissing motion for arrest of judgment.

*Henry J. Scott*, for appellant.—Pennsylvania by statute has repealed the old usury laws.   In Fitzsimons v. Baum, 44 Pa. 32, the Supreme Court expressly declared that the act of May 28, 1858, repealed the old law of March 2, 1723: Stayton v. Riddle, 114 Pa. 464; Second Nat. Bank's App., 96 Pa. 460; Montague v. McDowell, 99 Pa. 265; Nicholson's App., 20 W. N. C. 339.

*Joseph H. Taulane*, assistant district attorney, and *Samuel P. Rotan*, district attorney, for appellee.—The commonwealth contends that the defendant is guilty of both (a) maintaining a public nuisance at common law, and (b) maintaining a disorderly house under sec. 42 of the Act of March 31, 1860, P. L. 382.

Under the indictment it is immaterial whether the court holds the defendant is guilty at common law or under the statute: State v. Martin, 77 N. J. Law, 652 (73 Atl. Repr. 548); State v. Diamant, 73 N. J. Law, 131 (62 Atl. Repr. 286); Com. v. Soo Hoo Doo, 41 Pa. Superior Ct. 249; Stayton v. Riddle, 114 Pa. 464; Thomas v. Shoemaker, 6 W. & S. 179; Philanthropic Bldg. Assn. v. McKnight, 35 Pa. 470; Cheek v. Com., 79 Ky. 359; Com. v. Goodall, 165 Mass. 588 (43 N. E. Repr. 520); Ehrlick v. Com., 125 Ky. 742 (102 S. W. Repr. 289); Respass v. Com., 131 Ky. 807 (115 S. W. Repr. 1131).

Even in the absence of a statute prohibiting gaming,

it is a common-law nuisance to maintain a public gaming house: Vanderworker v. State, 13 Ark. 700; Cheek v. Com., 79 Ky. 359; Kneffler v. Com., 94 Ky. 359 (22 S. W. Repr. 446); Columbian Athletic Club v. State, 143 Ind. 98 (40 N. E. Repr. 914); State v. Canty, 207 Mo. 439 (105 S. W. Repr. 1078).

Noise or disorder is not essential to constitute a disorderly house: Beard v. State, 71 Md. 275 (17 Atl. Repr. 1044); Thatcher v. State, 48 Ark. 60 (2 S. W. Repr. 343); State v. Williams, 30 N. J. Law, 102; De Forest v. U. S., 11 Appeal Cases (D. C.), 458; Walt v. People, 46 Colo. 136 (104 Pac. Repr. 89).

The defendant is guilty of a misdemeanor at common law: Com. v. McHale, 97 Pa. 397; Com. v. Young, 16 Pa. Superior Ct. 317; Rex v. Brailsford, L. R. 2 K. B. Div. (1905) 730; Com. v. Lovett, 4 Clark, 5; Respublica v. Powell, 1 Dallas, 47; Barker v. Com., 19 Pa. 412; Com. v. Schoen, 25 Pa. Superior Ct. 211; Rex v. Porter, L. R. 1 K. B. Div. (1910) 369.

OPINION BY HEAD, J., April 17, 1911:

The defendant was convicted and sentenced on an indictment which in a single count charged that he "unlawfully did keep and maintain a certain common ill-governed and disorderly house," and "in said house did make loans to said persons at usurious rates of interest to the great damage and common nuisance of all the citizens, etc."

The evidence produced by the commonwealth—the defendant offered none—established that the latter was the manager in charge of a business conducted under the name of The Reliance Loan Company. This business was to lend small sums of money to poor people, to be repaid in specified weekly or monthly installments. If these installments were paid as agreed upon, the result would be that the lender would receive for the use of his money interest at rates far in excess of the rate fixed by law. There was no evidence whatever that the conduct of this

business was accompanied with the slightest disorder, as that word is generally understood, or in any way annoyed or disturbed the citizens residing in the neighborhood.

The learned trial judge, permitting the jury to pass upon the credibility of the witnesses, gave these instructions: "I charge you that it was a disorderly house under the law. Therefore the only question for you is whether the testimony is true." The reasoning which led the learned judge to his conclusion, more fully developed in his opinion denying a motion in arrest of judgment, may be thus briefly stated: The taking of usury is an unlawful act; a place where unlawful acts are habitually committed is a disorderly house, or a common nuisance, or both. "We may start with the assumption that the taking of usury in Pennsylvania is illegal. It is forbidden." This is the language of the opinion last referred to. If therefore the learned judge was wrong as to the fundamental proposition on which his conclusion rests, it must necessarily follow that the conviction of the defendant was a mistake, and the judgment must be reversed.

The status of usury or usurious contracts in Pennsylvania is defined and declared by an act of assembly. A few extracts from the decisions of the Supreme Court interpreting the Act of May 28, 1858, P. L. 622, will dispose of the question before us. In Fitzsimons v. Baum, 44 Pa. 32, WOODWARD, J., said: "This act is not only a substitution for, but an express repeal of, the first and second sections of the Act of March 2, 1723, the penal features of which are entirely omitted in the act of 1858. Under the old statute, as under the English statutes, usury consisted in taking more than the legal rate of interest for the loan of money, and was, in some sort, a public offense punishable by an action qui tam." In the appeal of the Second National Bank of Titusville, 96 Pa. 460, Mr. Justice PAXSON, discussing certain cases prior to the act of 1858, said: "At that time the taking of more than six per cent interest was unlawful, and subjected the lender to a penalty. It is not so now. The Act of May 28, 1858, P. L. 622, has

made a radical change in this respect.  By the first section of said act six per cent is allowed to be the legal rate of interest, where no express contract has been made for a less rate.  The second section recognized the right to reserve or contract for a higher rate, but provides that in such case the creditor shall not compel his debtor to pay more than six per cent; authorizes the debtor to retain and deduct the amount of the excess from such debt, and when he has voluntarily paid such excess to recover it by an action to be commenced within six months after such payment.  It is not therefore now unlawful for a debtor to pay and a creditor to receive more than six per cent."  In Montague v. McDowell, 99 Pa. 265, Chief Justice SHARSWOOD used the following language: "It is to be remembered in all discussions upon the subject of interest, that what used to be and still is called usury, is not now unlawful in this state—as it was prior to 1858.  By the Act of May 28, of that year, P. L. 622, the penalty previously imposed for taking more than the prescribed rate was repealed.  The creditor may lawfully charge and receive the excess, though he cannot coerce its payment by suit or process, and the debtor may recover it back if the action is brought within six months after payment."  In Stayton v. Riddle, 114 Pa. 464, Mr. Justice STERRETT said: "Since the passage of the act above referred to, it is not unlawful for a debtor to pay, or a creditor to receive more than six per cent interest."

The language above quoted is so clear and emphatic that no amount of elaboration of this opinion could add to its force.  It may be, as the able counsel representing the commonwealth argues, that institutions of the character of that managed by the defendant have become instruments of oppression under which a large class of people in the cities of our commonwealth suffer.  If this be true, it is the province of the legislature in its wisdom to find the remedy.

The judgment of the court below is reversed and the defendant is now discharged without day.